JAMES NICHOLSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ADA M. NICHOLSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 66966, 66967.   Promulgated July 19, 1935.

*Chase Morsey, Esq.*, for the petitioners.
*Nathan Gammon, Esq.*, for the respondent.

983

## OPINION.

McMahon: In Docket No. 66966, in the statement attached to the notice of deficiency it is stated that "Loss on sale of National Cash Register Co. stock disallowed. It is held that the sale was not bona fide." It also appears that the respondent increased James Nicholson's net income for 1929 from $40,424.66 to $73,435.38 and that he added to the deficiency of $5,516.51, as determined by him, "50% penalty as provided by section 293 (b) of the Revenue Act of 1928" in the amount of $2,758.26.

In the petition it is alleged, among other things, that the respondent erred in asserting such penalty and that the petitioner did not file or cause to be filed a personal income tax return for the year 1929 which was false or fraudulent or filed with intent to evade tax and prays that the Board find that he is not guilty of violating the law so as to be subjected to any penalty under section 293 (b), *supra*.

In his answer the respondent denies that he erred as alleged in the petition and alleges affirmatively that the petitioner "filed false or fraudulent Federal income tax return for the taxable year 1929 and that part of the deficiency found for said year was due to fraud, all with intent to evade tax." The facts upon which such allegations are based are alleged to be that the petitioner filed his return for 1929 on April 20, 1930; that the return showed a net income of $40,424.66 whereas his correct net income was $73,435.38; that he had, with intent to evade tax, understated his income by $33,010.72; and for further facts respondent adopts in his answer, by reference thereto, the notice of deficiency and statement attached thereto, copies of which are appended to the petition, as fully as if incorporated in his answer.

At the time of hearing the petitioner had not filed a reply. Counsel for petitioner stated that while he did not believe it was necessary to file a reply as the answer contained no new matter, it might be advisable to do so for the purpose of completing the record. Counsel for respondent stated that he had no objection to allowing petitioner to file a reply, conceding that he had the right to do so. Upon permission granted by the presiding member the petitioner filed a reply denying all the allegations contained in the answer and alleging that he is not guilty of filing a false and fraudulent return to evade tax.

The respondent contends, however, that by failing to file a reply within 45 days as required by Rule 15 of the Board's rules of practice James Nicholson has effectively admitted the affirmative allegations of fact set up in the answer, thereby relieving the respondent of further proving the fraudulent and evasive intent of petitioner in filing his return for 1929 and understating his income therein.

*F. O. Statler*, 27 B. T. A. 342, cited by respondent, is distinguishable from the instant proceeding. Furthermore, in *Solomon Beringer*, 29 B. T. A. 250, wherein the *Statler* case has also been distinguished, the Board stated:

\* \* \* If the answer merely reiterates affirmatively matters already covered by his notice of deficiency and assailed by the petition, there is no requirement that the petitioner shall as to those matters file a reply, and his failure to do so is not prejudicial. \* \* \*

and denied the respondent's motion for judgment on the pleadings in the full amount of the deficiencies and penalties. The instant proceeding is, in this respect, thereby controlled adversely to the respondent.

In both of those cases no reply had been filed. Here the presiding member, in conformity with the Board's Rule 19, during the hearing, permitted the filing of a reply, after counsel for respondent had stated that he had no objection thereto. The mere fact that petitioner failed to file a reply within the 45-day period provided by Rule 15, when petitioner was thereafter permitted to file it in conformity with Rule 19, can not relieve respondent of the burden of proof placed upon him expressly and in unambiguous terms by section 907 (a) of the Revenue Act of 1924, as amended by section 601 of the Revenue Act of 1928, in any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax.

Under Rule 19 extensions of time to file pleadings, except for the filing of the petition, may be ordered by the Board on its own motion or may be granted by it in its discretion on motion of either party. Thus, the Board, under its own rule, could, in its discretion, extend the period of 45 days, after the expiration thereof, within which the reply under Rule 15 could be filed. The principle of *Rio Grande Irrigation Co.* v. *Gildersleeve*, 174 U. S. 603, 608, relied upon by respondent, is not applicable here, since there no such discretionary power was reserved to the trial judge by the rule of the superior court.

Rule 19 is a valid rule. See *Commissioner* v. *Kerbaugh*, 74 Fed. (2d) 749, affirming *Henry S. Kerbaugh*, 29 B. T. A. 1014, and *Helvering* v. *Continental Oil Co.*, 68 Fed. (2d) 750.

Nor can the allegations denying fraud set forth in the petition be deemed of no effect as merely anticipatory of affirmative allegations of fact to be set forth in the answer to be filed by respondent. Here the petitioner did not, in his petition, anticipate a defense; he stated in his petition his defense to the assertions, in the notice of deficiency and attached statement, made by the respondent, including, among others, the determination of a penalty. Everything alleged

in the petition was germane to the contents of the notice of deficiency and attached statement which were challenged by petitioner; and petitioner was justified in thus presenting the issues in his petition. Pleadings and proceedings before this Board are dissimilar to those before courts, and general rules and principles as to pleading and practice before courts can not be applied indiscriminately without a recognition of those differences. *Farmers Feed Co.*, 10 B. T. A. 1069, 1072–73.

It is claimed by petitioners that the National Co. stock, the Industrial Process & Engineering Co. stock, and all other property involved herein was owned jointly by petitioners.

The record shows that James Nicholson was the record owner of 172½ shares of the Ellis Co. stock, and his wife was the record owner of 118⅛ shares of the same stock. Of the 290 shares of National Co. stock, 172 shares were in his name and 118 shares in her name. There is no evidence disclosing in whose name the 500 shares of the same stock were carried. James Nicholson testified that he bought them and they were carried originally in his regular brokerage account. He testified that he wanted the moneys received by himself and wife for the Ellis Co. stock deposited with his brokers in part as a credit against his loan, which would leave to his credit quite an amount at 5 percent until he invested it, and also because he intended to purchase some National Co. stock. However, there is no evidence showing that the stock of that company purchased thereafter was paid for out of these funds deposited with the brokers. He also testified that the certificates of stock of another corporation, the Industrial Process & Engineering Co., were not taken out in the name of himself and wife jointly, but that they were divided and some were in the name of his wife and some in his own name, and that he was not positive whether half of them were in his name and half in her name. There is no evidence whatever as to whether Mrs. Nicholson ever regarded any of such property as actually belonging to her. It does not appear that she was ever consulted or that she knew anything about any of the transactions except that she drew the checks for the money to be deposited with the brokers. James Nicholson's testimony that the property was held jointly is a conclusion, which is not binding on the Board and it is not borne out by the evidence. He may have honestly wished and felt that his wife should have an equal share and interest in all the property, but that is not sufficient for the purposes of the income tax law. The burden of proof is upon the petitioners in this respect and from the evidence we are unable to find that the petitioners owned any or all the property involved jointly.

The respondent disallowed a loss of $21,485.13 deducted by each petitioner, part of which petitioners claim was sustained upon the

sale of 395 shares of the stock of the National Co., upon the ground that these sales were not bona fide. In Docket No. 66966 the respondent added a fraud penalty of 50 percent of the deficiency determined to be due from James Nicholson. No fraud penalty has been determined against the petitioner Ada. M. Nicholson.

Here then we have two questions—one, whether the petitioners sustained deductible losses, and, two, whether James Nicholson has been guilty of fraud with intent to evade tax. *L. Schepp Co.*, 25 B. T. A. 419, 436.

The first question to be considered here is whether the purported sales of the National Co. stock were actual sales in 1929 entitling the petitioners to deduct any loss sustained therefrom.

A revenue agent who had a conference with James Nicholson in about March 1932 relating to these matters, testified that during such conference James Nicholson stated in substance that the transfers of the National Co. stock to Joseph B. Morrill were made " for the purpose of reducing income tax liability." James Nicholson denied that such had been his purpose and that he had so advised the revenue agents who were making the examination of the return. In *Helvering* v. *Gregory*, 69 Fed. (2d) 809; affirmed in *Gregory* v. *Helvering*, 293 U. S. 465, the Circuit Court for the Second Circuit stated:

We agree with the Board and the taxpayer that a transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is actuated by a desire to avoid, or, if one choose, to evade, taxation. * * *

However, in *Luella Hoyt Slayton*, 29 B. T. A. 931; affd., 76 Fed. (2d) 497, the Board stated:

* * * on the other hand, a mere gesture without the *vital intent to change ownership* is not to be recognized as a sale merely because superficially it resembles one. * * * [Emphasis supplied.]

There is no evidence whatever as to whether Ada M. Nicholson intended to sell the stock standing in her name. The evidence fails to disclose that these matters were even discussed with her or in her presence. While one of the notes was made payable to her, there is no evidence that she ever saw the note or knew that it had been made. The matter was discussed by her husband and son-in-law and they were the active participants in the transactions. The stock in her name and the stock in the name of her husband were transferred to the name of Joseph B. Morrill and he executed three notes and endorsed the certificates as collateral to such notes.

Joseph B. Morrill testified that the 290 shares of stock were sent by the brokers to the registrar's office for transfer, that " when the stock came back they called me down to Knight, Dysart & Gamble's and Mr. Nicholson—I turned it over to him and endorsed it as col-

lateral on his notes." The certificates were retained by the brokers and remained in the regular account of James Nicholson until December 5, 1929, when 290 shares were transferred to his safe-keeping account, and later, some time before March 19, 1930, retransferred in part to his regular account. As to the 500 shares he testified that " that stock was sent through and transferred to my name, and that stock instead of being endorsed I signed some kind of a blanket endorsement which allowed Mr. Nicholson to keep the stock up as collateral in his account." The certificates for the 500 shares were retained by the brokers and remained in the account of James Nicholson. So far as the record discloses the three notes of Joseph B. Morrill were kept by James Nicholson and were not delivered to the brokers with the stock. Thus the stock which supposedly was given as collateral to these notes may not have been treated as collateral to such notes but was, in fact, separated therefrom and deposited with the brokers to the account of James Nicholson. Furthermore, there is no evidence showing that the brokers had no claim against the stock. The 500 shares when transferred were in the possession of the brokers and remained with the brokers until sold in 1930. At the end of 1930, 290 shares still remained with the brokers in James Nicholson's regular account.

We have not overlooked the fact that the stock was transferred to Joseph B. Morrill. This is not sufficient to establish a bona fide sale in a situation such as is presented in the instant proceedings. *Harold B. Clark*, 2 B. T. A. 555, and *Theodore C. Jackson et al., Administrators*, 32 B. T. A. 470.

In our opinion the petitioner, James Nicholson, after the transfer had practically the same use and benefit of the stock for whatever purpose he desired as he had had before the transfer. Although the stock was transferred and notes therefor executed, we are not convinced that this was done with mutual intent on the part of the petitioners and their son-in-law to complete an absolute sale thereof. *Lulu Tirrill Coombs*, 30 B. T. A. 35; *Joseph Blumenthal*, 30 B. T. A. 125.

Furthermore, transactions involving members of the same family or those bearing a close relation to each other should be carefully scrutinized. *Joseph E. Uihlein*, 30 B. T. A. 399, 402, and cases cited therein.

The action of the respondent in disallowing these claimed losses must be sustained.

However, this is not tantamount to holding that James Nicholson filed a false and fraudulent return with intent to evade tax or that a part of the deficiency was due to fraud. The deduction may have been taken through a mistaken belief that the transactions entered

into were sales, the loss resulting from which he was entitled to deduct. That this was his belief is, in our opinion, shown by the testimony of the revenue agent who had a conference with James Nicholson as to the tax liability of petitioners for 1929. He stated James Nicholson claimed that he had a right to sell the stock, that it was a "perfectly legitimate sale, a bona fide sale", and that he expressed the thought that "he was being abused when other people were being allowed similar deductions—that he was being abused, discriminated against."

In *Henry S. Kerbaugh*, 29 B. T. A. 1014; affirmed in *Commissioner* v. *Kerbaugh, supra*, the Board stated:

* * * A charge of fraud has always been regarded as a serious matter in the law. Not only is it never presumed, but the ordinary preponderance of evidence is not sufficient to establish such a charge. It must be proved by clear and convincing evidence. * * *

* * * If not admitted it must be proved. * * *

Here fraud is not admitted. The mere fact that his return showed a net income for the taxable year 1929 in the sum of $40,424.66 and the respondent, in recomputing his tax liability, determined that the net income for that year was $73,435.38, by itself, does not establish fraud. If it did, then all taxpayers against whom deficiencies are determined would be guilty of fraud and subject to the imposition of a fraud penalty. Nor does the lack of evidence to sustain the petitioners' contentions prove fraud. As stated in *L. Schepp Co., supra*, "both parties may fail through inadequate proof in their several issues, and thus the deficiency would be sustained and the penalty set aside." The burden of proving fraud is upon the respondent and his proof must be clear and convincing. The evidence viewed as a whole is not clear and convincing and hence we must hold that the respondent, upon whom rests the burden of proving fraud, has not discharged that burden and therefore no fraud penalty may be imposed.

The respondent further alleges that, in the event the Board finds from the evidence that James Nicholson was not guilty of fraud "but that part of the deficiency was due to negligence or intentional disregard of rules or regulations, then the Board should find the taxpayer guilty of negligence and the appropriate penalty should be asserted." No determination of negligence was made by the respondent, no penalty for negligence was added to the deficiency in tax as determined, no facts tending to disclose negligence, were pleaded by the respondent, and no evidence was offered by either party upon that subject. On brief respondent, in concluding, states "the Board's attention is drawn to the prayers of the answer of respondent which asks in any event for the assertion of the negligence penalty * * *."

The record as made is insufficient to sustain a finding or holding that a negligence penalty should be imposed. *American Ideal Cleaning Co.*, 30 B. T. A. 529, and authority cited therein.

The next question to be determined relates to the alleged loss of $1,650, being the cost of 3,300 shares of stock of the Industrial Process & Engineering Co., deducted by each petitioner from gross income in 1929. It is claimed by petitioners that this stock became worthless in 1929. The respondent disallowed the deduction upon the ground that such stock was worthless prior to 1929. The petitioner James Nicholson testified that he did not know when the company ceased to do business, but thought it was about 1926, 1927, or 1928, that he tried to find the old officers at the addresses which he had but failed to locate them, and that he finally wired the Secretary of State of Delaware, from whom he received the telegram set forth in our findings.

From the evidence adduced we are unable to determine whether the stock had any value prior to 1929, or whether it became worthless in 1929 or prior thereto. The petitioners argue on brief that the fact that the plants in Colorado and St. Louis were abandoned prior to 1929 does not show that the stock was worthless prior to 1929 as the patent which the company owned was still in existence and believed by petitioners to be very valuable. The record is wholly without any evidence as to the value of this patent or what became of it. There is no evidence showing that the Industrial Process & Engineering Co. is the same as the " Carbonizing Process Corporation " referred to in the above telegram. The petitioners having failed to show that the respondent erred, his determination in disallowing the loss of $1,650 deducted by each petitioner must be sustained.

All other errors assigned in the respective petitions not discussed herein have been abandoned, since no evidence was presented or arguments made in respect thereto. Hence the action of the respondent in respect thereto must be approved.

Reviewed by the Board.

> *In Docket No. 66966 decision for the respondent for the deficiency without any fraud or negligence penalty will be entered. In Docket No. 66967 decision will be entered for the respondent.*