Everett Malcolm Bratcher v. Commissioner.
Bratcher v. Commissioner
Docket No. 8077.
United States Tax Court
1949 Tax Ct. Memo LEXIS 136; 8 T.C.M. (CCH) 603; T.C.M. (RIA) 49158; June 27, 1949
Everett Malcolm Bratcher, pro se. E. M. Woolf, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner challenges respondent's determination of deficiencies in income tax and assessment of penalties for failure to file a timely return and for fraud for the years 1941, 1942, and 1943, as follows: 25%
50%
Year
Deficiency
Penalty
Penalty
Total
1941
$2,683.73
$670.93
$1,341.87
$4,696.53
1942
16,383.73
None
8,191.86
24,575.59
1943
16,056.51
None
8,028.26
24,084.77
The above deficiencies result from respondent's action in increasing petitioner's reported income for each taxable year. Findings of Fact Petitioner filed Federal income tax returns for the years 1941, 1942, and 1943 with the collector *137 of internal revenue for the district of Maryland. During the taxable years petitioner was an orchestra leader conducting an orchestra under the names of "Washington All States Club" and "Washie Bratcher's Orchestra." Beginning in July, 1941, and continuing through the year 1943 petitioner rented a ballroom known as the Hall of Nations in Washington Hotel, Washington, D.C., where he conducted public dances. Fire regulations restricted the ballroom's attendance to 650 persons. For the purpose of reckoning taxes upon admissions to the dances petitioner kept a record in two small loose-leaf notebooks of the number of dances held and the number of persons attending each dance. As disclosed by those record books, the price of dance tickets varied during the taxable years from 44 cents to $1.10 per person, the highest prices being charged for dances held on Saturdays and holidays. In his record books the number of dances held each month and the amounts received by petitioner for admissions were tabulated as follows: Number
Total
Total
Year
of Dances
Attendance
Received
1941
41
7,529
$ 5,326.84
1942
105
22,824
16,307.00
1943
129
27,436
23,435.30
*138 The attendance at the dances was at or near the capacity of 650 persons, except that it fell off somewhat in the summer and the middle of the week. During the taxable years, the aggregate number of dances held on each day of the week was as follows: Day
1941
1942
1943
Total
Wednesday
4
6
13
23
Thursday
2
0
0
2
Friday
10
47
53
110
Saturday
25
50
51
126
Sunday
0
2
12
14
Totals
41
105
129
During the taxable years petitioner sold memberships in Washington All States Club for $1.00 each. A pamphlet distributed by petitioner to promote sale of memberships contains the following information: "The fee for membership good for one year will be one dollar ($1.00). Your dollar for membership will place you on the mailing list to receive notices of all dances and other affairs promoted by this club. Members will also be charged smaller fees for the affairs than will guests of members." Petitioner does not have a record of the number of memberships sold in the taxable years. The ordinary and necessary business expenses paid by petitioner during the years 1941, 1942, and 1943 were as follows: 1941
1942
1943
Ballroom Rent
$4,585.00
$10,900.00
$12,700.00
Advertising
911.43
2,088.21
1,171.78
Printing
518.76
327.24
None
Photography
19.00
82.00
15.00
Musical Arrangements
294.00
758.00
None
Admission Taxes
62.45
1,468.19
2,276.25
Union Dues
None
106.04
30.83
Flowers
4.50
23.00
36.86
Telephone
45.01
191.93
76.83
Managerial Employees
90.00
629.50
None
Office Rent
200.00
600.00
200.00
Contest Prizes
52.50
4.95
None
Recordings
94.50
45.50
None
Typewriter Rent
None
5.00
None
Social Security Taxes
None
None
270.74
Entertainment
None
None
291.79
Tickets and Equipment
None
159.50
50.00
Payroll - Musicians
1,640.00
8,480.00
12,142.10
Totals
$8,517.15
$25,869.00
$29,262.18
*139 In January, 1942, petitioner became a member of the A.F.L. Union of Musicians, and from that time through the years 1942 and 1943 he hired only Union musicians. As required by contracts with the Union, petitioner paid each of his musicians at least the minimum Union wage of $8.00 per engagement. Throughout the year 1942 and until August, 1943, he employed at least ten musicians for each dance. From August, 1943, to the end of that year he kept a record, for purposes of payroll deductions, of the number of musicians employed and the wages paid them. As disclosed by that record, the weekly totals were as follows: Number of
Week Ending
Musicians
Weekly Payroll
August 7
24
$ 309.82
August 14
23
310.30
August 21
24
336.15
August 28
25
440.81
September 4
25
372.72
September 11
22
314.22
September 18
21
327.62
September 25
18
309.85
October 2
23
353.40
October 10
26
630.06
October 17
26
607.10
October 24
23
686.52
October 31
24
717.09
November 7
26
750.63
November 14
25
712.99
November 21
26
762.39
November 28
25
741.00
December 5
25
850.39
December 12
23
667.44
December 19
24
743.96
December 26
24
717.64
Total
$11,662.10
*140 In July, 1941, petitioner opened a checking account at Riggs National Bank. During the taxable years he deposited the following amounts in the account: Year
Deposits
1941
$ 9,008.35
1942
24,710.13
1943
940.00 Petitioner drew about 452 checks against the account, varying in amount from $1.00 to $2,211.50. The account was closed on April 26, 1943. During the taxable years petitioner paid $2,211.50 for a Cadillac automobile, $1,100 for a diamond ring, $200 for a watch, and $2,060.26 for clothing. Petitioner filed an income tax return on Form 1040 for the year 1941 on July 9, 1943. On the face of the return the following appears in red crayon: "Amended. Non-Taxable Tentative Return filed 3/16/42." For the year 1941 petitioner reported gross income of $800, as "Salary from Washington All States Club." He claimed no deductions. On March 16, 1942, respondent received a Federal income tax form from petitioner which was designated as "tentative." Petitioner filed an income tax return on Form 1040A for the year 1942. He reported gross income of $2,700, and claimed no deductions. Petitioner filed an income tax return on Form 1040 for the year 1943. He reported *141 an "Estimated" net profit from business or profession in the amount of $3,600, and claimed deductions of $20 for contributions, and $5.25 for amusement taxes paid. In his notice of deficiency, respondent determined that "in the absence of adequate records, your income from business is held to be": Year
Income
1941
$14,482.52
1942
36,701.14
1943
34,846.88 Respondent assessed a 25 per cent penalty for the year 1941, and a 50 per cent penalty for the years 1941, 1942, and 1943, explaining in the notice of deficiency that - "Inasmuch as you failed to file an income tax return for the taxable year ended December 31, 1941, within the time prescribed by law, 25 per centum of the tax has been added thereto in accordance with the provisions of Section 291 of the Internal Revenue Code. "The 50% penalty shown herein has been asserted in accordance with the provisions of Section 293(b) of the Internal Revenue Code." Petitioner has not overcome the presumption of correctness attaching to respondent's determination of deficiencies. Respondent has not met his burden of proving fraud. No part of the deficiencies in question *142 were due to fraud with intent to evade tax. Petitioner did not fail to file a return for the year 1941 within the time required by law. Opinion In the face of the testimony of respondent's disinterested witness, we cannot accept as accurate petitioner's informal records of the attendance at the dances conducted by him during the taxable year. And for all that appears, these additional admissions may have been charged for at the highest rate. Nor is there evidence of the number of annual "memberships" which he sold at $1.00 each. The consequence is that even granted large business expenses approximated as nearly as may be in our findings of fact, it cannot be said that petitioner has sustained his burden of showing that his gross income was not so great as to justify respondent's determination. But even though petitioner has not sustained his burden, the onus of proving fraud remains, of course, upon respondent. Internal Revenue Code, section 1112; James Nicholson, 32 B.T.A. 977, affirmed (C.C.A., 8th Cir.), 90 Fed. (2d) 978. We conclude that the record fails to sustain this burden also. Even a large number of admissions charged *143 for at the lowest rate would be insufficient to result in any net income to petitioner for any of the years in issue in the light of his considerable deductions. Without taxable income it is impossible to conclude that petitioner failed to report income with intent to evade tax. We have accordingly found as facts that petitioner's burden of proving the incorrectness of the deficiency and respondent's burden of proving fraud have equally failed of support. [1]
The remaining question concerns a delinquency penalty for the year 1941. Respondent conceded in the opening statement that a "tentative" return was filed apparently on March 16, 1942. While he does not abandon the issue, we think it is incumbent upon him to produce the return thus shown to be in his possession for the purpose of proving, if such be the fact, that it failed to meet the technical requirements of a true return. Without such evidence, we are unwilling to sustain the penalty. And while it is true that petitioner *144 could have subpoenaed the return, the fact that he appeared without counsel makes us reluctant to decide the point against him for failure to do so. Under the circumstances we conclude that the burden of going forward passed to respondent on this issue and that it has not been met. Decision will be entered under Rule 50. Footnotes
1. "* * * both parties may fall through inadequate proof in their several issues, and thus the deficiency would be sustained and the penalty set aside." ( L. Schepp Co., 25 B.T.A. 419, 437↩.)