John J. Gough v. Commissioner.
Gough v. Commissioner
Docket No. 29331.
United States Tax Court
1952 Tax Ct. Memo LEXIS 62; 11 T.C.M. (CCH) 1022; T.C.M. (RIA) 52304; October 23, 1952
*62 James A. Ronayne, Esq., for the petitioner. John J. Madden, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined a deficiency in petitioner's income tax for the year 1944 of $124,413.34. The deficiency is based upon a determination that petitioner's gross receipts from his business were understated by $148,223.02, which sum is the amount of "cash payouts" for purchases and expenses made by petitioner during 1944, in connection with the operation of his business. The respondent has increased petitioner's net income by $148,575.52, the amount of $352.50 being an additional increase, beyond the sum of the cash payouts, which was not contested in this proceeding. The respondent has further determined that part of the deficiency was due to fraud with intent to evade tax and has imposed the fifty per cent addition thereto provided by sec. 293 (b) of the Code, in the amount of $62,206.67. Findings of Fact Petitioner is a resident of New York City, New York. He filed his return for 1944 with the collector for the second district of New York. He kept his books and prepared his tax returns on a cash-calendar *63 year basis, although inventory was accrued. The petitioner, in 1944, was 63 years of age. In 1921 he was retired from the New York City Health Department on a yearly pension of $917.31. From 1921 until 1934, he had little, if any, income in addition to his pension. The petitioner was engaged during the taxable year in the bar and restaurant business in New York City. In 1934, he opened the bar and grill at 41 Dey Street and in 1935, the one located at 202 Fulton Street. The petitioner operated each of his bars during 1944 in the following manner: He employed as manager for both places, Robert O'Brien. O'Brien's duties as manager included purchasing merchandise, paying bills, and expenses, making bank deposits, taking register readings and reconciling daily all receipts, expenses and deposits. The total number of employees at both places was about 29. The bars were open from 8:00 a.m. until 4:00 a.m., daily. In addition to beer, liquor and mixed drinks, meals, luncheons and sandwiches were sold, over the bar and at tables served by waitresses. The petitioner maintained close personal contact with his business and visited his bars each evening, usually staying from about 6: *64 00 p.m. until closing time at 4:00 a.m. During the day he would talk to his manager, O'Brien, by phone. The petitioner's daughter, Helen, and son, Ray, also participated in the conduct of the business. Cash registers were used at both places of business. Several registers were installed at each bar to record over-the-bar sales of food and drinks. A register was located in each kitchen to record over-the-counter sales of food by the chefs. Sales of food and drinks at the tables, by the waitresses, were not recorded on any register. When the waitresses went off duty, O'Brien added their checks and noted the totals on a paper pad. The bar registers had a mechanical attachment for separating sales of food from sales of drinks, but had no such device for distinguishing sales of beer from sales of liquor and mixed drinks. The bar registers were equipped with tapes, the kitchen registers were not. All petitioner's sales were for cash. During the course of a day's business, the petitioner, his son, or O'Brien, would remove cash from each register and put in a slip with the notation so many dollars had been taken to the "back drawer" which was located at 41 Dey Street. The "back drawer" *65 money was the source of the funds used for the "cash payouts" in question. The petitioner was distrustful of banks and deposited only sufficient money to cover checks drawn. The balance in petitioner's bank account on January 3, 1944, was $4.79, and on December 31, 1944, $19.02. Purchases and items of expense were paid by both cash and check. Purchases of food stuff, salaries, rent and miscellaneous expenses were paid in cash and constitute the "cash payouts" referred to herein. With the exception of minor items payment was made from the cash in the "back drawer" at 41 Dey Street and a slip put in noting the item and amount. Each morning O'Brien took off the register tapes and readings and made a reconciliation of the preceding day's operations. The results of his checkout, together with the register tapes and readings, the memo showing waitresses' receipts, the cash payout slips, and a memo noting bank deposits, if any, were then turned over by O'Brien to the bookkeeper for entry in the daily record. The petitioner's daily business record of receipts, expenses and deposits consisted of a loose leaf book. The entries on the sheets were made by the petitioner's daughter and *66 son. Occasionally, in their absence, the entries were made by O'Brien. The petitioner employed an accountant, Leo Goldman, who maintained a set of bound books consisting of the following: A sales book, a daily expense book, and a purchase book for each place of business and a bank deposit and check payment book. Goldman also prepared yearly summary sheets from the books he kept. Once a month Goldman came to petitioner's place of business and received from O'Brien the loose leaf book containing the daily sheets for the preceding month. From the daily sheets [purporting to show all receipts, expenses, and deposits for the preceding month's operations, for both places of business,] Goldman posted to the books maintained by him. No general ledger was kept. Opening and closing inventories were noted on the yearly summary sheets. Goldman prepared the petitioner's tax return from the bound books and yearly summary sheets maintained by him. The petitioner's books disclosed the following for the year 1944. Food
Beer
Liquor
Total
Sales
$39,815.40
$125,936.40
$140,223.35
$305,975.15 [1]
Purchases
44,569.20
66,116.47
70,043.32
180,728.99
Inventory decrease
18,671.00 [2]
Cost of goods sold
199,399.99
Gross profit
106,545.16
Expenses
90,501.77
Net profit
16,043.39
*67 Purchases and expenses aggregating $148,223.02 were paid by cash and constitute the "cash payouts" in question. The books also show that frequently a day's cash payouts and bank deposits exceeded sales. Also, that petitioner withdrew from the business for his personal use during 1944, $24,084.49. During the taxable year petitioner purchased for cash, real estate at 717-23 Eighth Avenue, New York City, at a cost of $48,974.85. Payment was made by two deposits of cash. The petitioner's books and records further disclose, that for the year 1944, cash expenditures and withdrawals, both for business and for personal use, exceeded cash available to petitioner from gross business receipts and other known sources as shown by the following schedules: Cash Expenditures and Withdrawals
Purchases re operation of business
$180,728.99
Expenses re operation of business
90,501.77
Withdrawals from business by petitioner
14,084.49
Purchase of real estate by petitioner
48,974.85
Total
$334,290.10
Cash Available
Balance, cash in bank, 1/3/44
$ 4.79
Gross business receipts per books
305,945.15
Yearly pension
917.31
Loan from daughter
8,500.00
Total
$315,367.07
Excess of expenditures and withdrawals over cash
available per petitioner's books and records
$ 18,923.03
*68 The parties have stipulated, that of the $24,084.49 withdrawn by petitioner from the business in 1944, the sum of $10,000 was applied against the purchase of real estate. The petitioner has failed to prove that there was included in the amount of gross receipts for 1944, in his return, the sum of $148,223.02, the amount of "cash payouts" for expenses and purchases. The respondent has failed to prove that all or part of the deficiency in tax for 1944 was due to petitioner's fraud with intent to evade tax. Opinion The issues are (1) whether the petitioner's income for 1944 was understated in the amount determined by the respondent; and (2) whether all or any part of the deficiency is due to fraud. Issue 1. The respondent has determined that the sum of $148,223.02, the total amount of "cash payouts" in 1944, was not included in the gross income of petitioner's business. His determination is prima facie correct and the burden of proof of the petitioner is to establish error in respondent's determination. The petitioner cannot discharge his burden of proof by mere affirmations that his return was correct. Halle v. Commissioner, 7 T.C. 245, aff'd, 175 Fed. (2d) 500, *69 certiorari denied, 338 U.S. 949. In support of his determination that petitioner's gross receipts were understated by the amount of the "cash payouts", respondent introduced the testimony of the examining revenue agent who made a reconstruction of petitioner's gross receipts for 1944. The reconstruction was based on a normal percentage mark-up, determined with reference to O.P.A. ceiling prices in effect in 1944, as applied to the cost of goods sold, as shown by petitioner's books. The agent testified in detail as to his method of reconstructing gross receipts. The method which he employed was fair and reasonable. Sales, based on respondent's reconstruction, amounted to $449,684.93, which is substantially the same amount as the figure for sales, $454,168.17, computed by adding back to the reported sales the amount of "cash payouts", as finally determined by the respondent. In the face of the reconstruction of petitioner's gross business income for 1944, by the respondent, we cannot accept as evidence of his true gross income the bookkeeping and account records offered in evidence by the petitioner. They are not the books of original entry. The books of original entry, *70 loose leaf sheets, were not offered by the petitioner; neither were cash register tapes and daily memoranda of receipts and disbursements. Goldman, petitioner's accountant, at no time audited the missing, daily record, and he did not know whether the daily, loose-leaf record was correct. The books which he made up from the missing, original, daily records do not, therefore, constitute proof of the correctness and accuracy of either the daily records, or the contents of Goldman's records. The petitioner, without the original bookkeeping records, has been unable to prove that his gross receipts in 1944 were not as large as the respondent has determined, and as great as respondent's agent has reconstructed. We have taken into account the testimony of O'Brien, the former manager and employee, about his practice of misappropriating money out of the daily receipts of the business, but his testimony fails to help petitioner. Neither he nor the petitioner could establish the amount, if any, that O'Brien had misappropriated in 1944 and failed to repay before the end of 1944. The reconstruction of petitioner's gross business income during 1944, made by the respondent, is reasonable and indicates, *71 strongly, that the "cash payouts" were not included in gross income before deducting the same amounts as expenses. The petitioner has failed to establish that his gross business receipts were not as large as the respondent has determined. The respondent's determination of the amount of gross income is sustained. Issue 2. The burden of proving fraud rests upon the respondent, section 1112, I.R.C., James Nicholson, 32 B.T.A. 977, aff'd, 90 Fed. (2d) 978. Even though the petitioner has not sustained his burden, the addition of 50 per cent to the deficiency cannot be sustained unless the respondent shows by clear and convincing evidence that the deficiency is due, in whole or in part, to petitioner's intent to fraudulently evade tax. Suspicion and even neglect do not support a finding of fraud. Walter M. Ferguson, Jr., 14 T.C. 846, 849. It is concluded that the respondent, also, has failed in his burden of proof. All that the respondent relies upon as proof of fraudulent intent to understate income, is the transaction in 1944 involving the purchase of a piece of real estate. The petitioner has accounted for the source of the funds used except *72 $18,000, and he has testified that said amount represented pre-1944 savings. There is no evidence to disprove his explanation of the source of $18,000, and his explanation that he had pre-1944 savings in that amount is reasonable, considering all of the evidence before us. There is much in the record which gives rise to suspicion and doubt, and the petitioner was in many ways negligent. But neither suspicion, nor negligence, nor doubt support a finding of fraudulent intent to evade tax. Therefore, we are unable to sustain respondent's addition to the deficiency of 50 per cent thereof. The petitioner has failed to prove the incorrectness of the deficiency, and, equally, the respondent has failed to prove fraud. Decision will be entered under Rule 50. Footnotes
1. Per tax return $305,945.17. ↩
2. Inventory January 1, 1944, $24,925.16; December 31, 1944, $6,254.16.↩