Estate of John P. Winn, Deceased, Ruth J. Winn, Executrix, and Ruth J. Winn, Individually, v. Commissioner.
Estate of John P. Winn v. Commissioner
Docket No. 36869.
United States Tax Court
1953 Tax Ct. Memo LEXIS 165; 12 T.C.M. (CCH) 886; T.C.M. (RIA) 53260; July 31, 1953
*165 Ed M. Lowrance, Esq., 81 Monroe Avenue, Memphis, Tenn., John R. Stivers, Esq., and Walter Chandler, Esq., for the petitioners. Charles R. Hembree, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined in his notice of deficiency that petitioners are liable for the 50 per cent fraud penalty based upon income tax deficiencies for the years 1943, 1944 and 1945 as follows: Year
50% Fraud Penalty
1943
$1,232.36
1944
1,471.58
1945
1,966.90
The deficiencies in income tax upon which the above fraud penalties were computed were paid in October 1947, prior to the issuance of the notice of deficiency. The sole issue presented is whether the joint income tax returns filed by John P. Winn (now deceased) and his wife, petitioner Ruth J. Winn, in 1943, 1944 and 1945, were false and fraudulent when made, and were filed by them with the fraudulent intent to evade the payment of the tax so as to invoke the imposition of the 50 per cent penalty prescribed in section 293 (b) of the Internal Revenue Code. Findings of Fact John P. Winn, herein called "Winn", died testate on *166 October 28, 1946, and Ruth J. Winn, his surviving widow, herein called "Ruth", was appointed and qualified as executrix of his estate. They both resided in Memphis, Tennessee, and for each of the calendar years 1943, 1944 and 1945 Winn and Ruth filed joint income tax returns with the collector of internal revenue for the district of Tennessee, wherein they reported taxable net income and tax liability as follows: Net Income
Tax Liability
Year
Reported
Reported
1943
$2,505.56
$1,337.78
1944
(664.14) *
0
1945
6,301.80
955.45
Winn, in 1943, 1944 and 1945, and prior thereto, was engaged in the hardware and appliance business. He and Ruth owned certain rental properties which were managed by the Hobson-Kerns Company. The profits or losses from the appliance and hardware business, and the net rental income were reported as follows: Business Profit
Rent Income
Year
or Loss Reported
Reported
1943
$ 108.11 (loss)
$3,003.67
1944
1,933.44 (loss)
1,269.30
1945
3,819.25 (profit)
2,482.55
While the income tax returns for each of the three years bore the signatures of Winn *167 and Ruth, neither of them prepared same, nor were they capable of doing so. Winn always had an accountant prepare their returns. The 1943 and 1944 returns were not typewritten and the handwriting thereon, other than the signatures, was not that of Winn or Ruth. The name of the person or accountant who prepared the returns for 1943 and 1944 is not known. The return for 1945 was typewritten and was prepared by Geo. W. Thaxton, an accountant, and bears his signature as the person who prepared it. Thaxton died in 1948, three years before this proceeding was begun. Winn was a victim of cancer and was in bad health for at least two years prior to his death. He was fifty years old when he died. He was a religious man, never known to defraud any one and, except for this proceeding, was never accused of fraud. This was the first time the correctness of his income tax returns was challenged by the Government. In September 1947, about one year after Winn's death, respondent's investigating agents contacted Ruth for the purpose of making an examination of Winn's books and records, and she referred them to Thaxton, Winn's accountant, who produced the books and records and they made an examination *168 of same during all of which Thaxton was present. As a result of this examination, and based thereon, respondent determined the net income for the taxable years involved, as corrected, to be as follows: Year
Corrected Net Income
1943
$13,257.65
1944
11,927.44
1945
16,828.48 and the corrected profits from decedent's business and the corrected net rental income are as follows: Corrected
Corrected
Business
Net
Year
Profits
Rental Income
1943
$ 9,995.44
$3,652.21
1944
10,297.27
2,483.30
1945
13,353.30
3,475.18
Shortly thereafter, and before issuance of a deficiency notice, Ruth, upon the advice of Thaxton, paid in full the deficiencies in the tax as determined by the Commissioner as result of the examination, but the 50 per cent fraud penalties based thereon were not paid, and subsequently they were made the subject of the notice of deficiency issued by the Commissioner on June 25, 1951, which is the basis of this proceeding. Winn was not a bookkeeper or accountant and no regular set of books was kept in the conduct of his business, but the records were largely loose-leaf. Respondent's investigating agents, in ascertaining *169 income from the hardware and appliance business "examined the statements, profit and loss statements, one for each month. There were twelve of them each year. They were loose sheets and they were from the Butler Bros. firm in St. Louis" from which firm Winn bought the supplies which he sold in his appliance and hardware business. The rental income was taken from monthly reports made to Winn by Hobson-Kerns Company. These did not reflect expenditures made by Winn, individually. The books and records of Winn examined by respondent's agents were left at Thaxton's residence at the completion of the investigation and after diligent search have not been found and were not produced at the hearing. All work papers and other papers which were accumulated and used by respondent's investigators have also been lost and could not be produced at the hearing, the only papers produced being the official reports made by the two investigators, one of whom testified. Principally the discrepancy between income reported and that found by the investigators was due to understatements of income and overstatements of purchases. However, in 1945 purchases were reported to be $71,688 and respondent's audit *170 showed same to be $77,299, an error adverse to petitioners' interest. In the taxable years Ruth did not participate in the operation or management of the business and she had no knowledge concerning same. When she signed the income tax returns in question, she believed them to be correct and had no intention to defraud. No agent of the government ever discussed with Ruth the deficiencies. The respondent has failed to prove that all or any part of the deficiencies in tax for 1943, 1944 and 1945 were due to petitioners' fraud with intent to evade tax. Opinion The single issue here presented is whether the joint returns filed by Winn and Ruth in the taxable years were false and fraudulent and were filed by them with the fraudulent intent to evade the payment of the tax so as to invoke the imposition of the 50 per cent penalty prescribed in section 293 (b) of the Internal Revenue Code. The burden of proving fraud rests upon respondent. Section 1112, I.R.C.; Henry S. Kerbaugh, 29 B.T.A. 1014; James Nicholson, 32 B.T.A. 977, affd. 90 Fed. (2d) 978. In some respects the facts here of a gross understatement *171 of income for three years are similar to those in Walter M. Ferguson, Jr., 14 T.C. 846, where we held fraud was not proved and wherein we said: "A strong suspicion that Walter knew his income was more than he was reporting might arise from the record. But suspicion of incredible ignorance or of actual knowledge on his part is not enough. Negligence, careless indifference, or disregard of rules and regulations would not suffice. The petitioners dismissed their responsibility to file proper returns much too lightly. But the Commissioner, to support the fraud penalties, must prove by clear and convincing evidence that the taxpayers, or one of them, intended to defraud him." In the instant case, under all of the evidence and the record as a whole, it is our considered opinion that respondent has failed to sustain his burden of proof, and has not shown by clear and convincing evidence that any part of the deficiencies in question is due to fraud with intent to evade the tax on the part of petitioners or either of them, and we have so found as an ultimate fact. Certainly the evidence completely fails to cast even a suspicion of fraud against Ruth, and while the evidence *172 does create a strong suspicion that Winn knew, or should have known, that the income reported in the returns was grossly understated, the evidence fails to show that he knew such fact, or that he was actuated by a fraudulent intent in filing the returns. We do know that he did not prepare the returns, nor is it shown that he even assisted in their preparation or knew their contents when he signed them. Fraud implies guilty knowledge, and here to impute fraud to Winn, it must be shown: (a) that he knew the contents of the returns when he signed same; (b) that he knew same to be false; and (c) that he made same with the fraudulent intent to evade tax. Respondent has not shown either of these to be true. The only evidence directly connecting Winn with the returns is his signature thereon. We know that he did not prepare them, nor is it shown that he read them. He was so deficient in knowledge of accounting and the law and regulations governing income tax, that he never attempted to prepare his own returns and always had an accountant do so. It is a matter of common knowledge that many successful business and professional men are in the same category and that they leave to an accountant *173 in whom they have confidence the ascertainment of their taxable income and the preparation of returns reporting same, and often when completed they sign on the dotted line, without even reading the return. This may be negligence, but in the absence of guilty knowledge it is not fraud. It has been held that "negligence, whether slight or great, is not equivalent to the fraud with intent to evade the tax named in the statute". Mitchell v. Commissioner, 118 Fed. (2d) 308. The facts in this case distinguish it from those cited by respondent, among which is Charles A. Rogers, 38 B.T.A. 16, affd. 111 Fed. (2d) 987, where there was gross understatement of income for three years, and the fraud penalty was imposed. A striking difference bearing directly upon the fraud issue is that in the Rogers case the taxpayer, prior to the transaction involved, had been convicted of embezzlement and the appellate court, in sustaining the imposition of the fraud penalty, held this evidence was pertinent on that issue, observing "that a man who will embezzle funds will not hesitate to understate his income with intent to defraud the government". Here petitioners *174 had a clean record, and except for this proceeding had never before been accused of fraud, and the correctness of their income tax returns had never before been challenged. If a previous bad record is a circumstance tending to sustain a fraud charge, a good record is a circumstance tending to refute same. Respondent points out that petitioners offered no explanation why the income in question was incorrectly reported. It appears that Winn and Thaxton, who might have done so, are both dead. Furthermore, until respondent proved the fraud as charged, petitioners were not required to offer testimony. Decision will be entered for the petitioners. Footnotes
*. Adjusted gross income reported as net loss.↩