(Mrs.) Mary H. Sachs v. Commissioner.
Sachs v. Commissioner
Docket No. 48033.
United States Tax Court
T.C. Memo 1955-182; 1955 Tax Ct. Memo LEXIS 154; 14 T.C.M. (CCH) 703; T.C.M. (RIA) 55182; June 30, 1955
*154 Mrs. Mary H. Sachs, 1811 Friendly Road, Greensboro, N.C., pro se. Newman A. Townsend, Jr., Esq., and Herman Wolff Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income taxes and penalties, under section 293 (b), Internal Revenue Code of 1939, as follows: Calendar Year
Income Tax
Penalty
1946
$ 93.70
$ 46.85
1947
277.99
138.99
1948
310.37
155.18
1949
418.39
209.19 The issues are whether petitioner is entitled to various deductions claimed for each of the years and to dependency credits for 1947, 1948 and 1949 and whether she is liable for fraud penalties for each of the years involved. Petitioner claims overpayments for 1948 and 1949. Findings of Fact Petitioner, from 1946 through 1949, was a resident of Greensboro, North Carolina, and filed her income tax returns for such years with the collector of internal revenue for the district of North Carolina. She has a high school and business college education and since finishing business college has been employed as a clerk and later as an accountant. During the years involved she was employed as an *155 office auditor in the office of the collector of internal revenue, Greensboro, North Carolina, and in such capacity audited returns as to the dependents and deductions claimed and the income reported. She recommended assessment of any deficiencies disclosed by such audits. She was considered by her supervisor to have an excellent knowledge of the income tax laws and to have performed her duties efficiently. During these years she subscribed to publications dealing with the subject of Federal income tax law in order to become more familiar with her work. At the hearing petitioner did not produce any records, other than a few canceled checks, from which she ascertained the deductions claimed on her returns for 1946 through 1949. In these returns she claimed to have made charitable contributions totaling $460, $580.70, $748.50, and $645, respectively. Her records account for contributions of $30, $20, $26 and $20, respectively; the remainder are not supported by receipts or other written records. During the years involved, she was a member of the Pinnacle Methodist Church in Pinnacle, North Carolina, and attended but was not a member of the First Presbyterian Church in Greensboro. In *156 1946 she bought baby clothing for $40.76 and when she was unable to use it and while it was still unused she donated it to the Salvation Army in 1947. Respondent in auditing these returns allowed petitioner deductions of $100, $125, $125, and $125, respectively, for charitable contributions during such years. In these same returns petitioner claimed to have paid city, county and state income taxes totaling $94, $88, $93.70 and $85.60, respectively. The disallowance of $94 in 1946 and $87.64 in 1947 has not been placed in issue. In her return for 1949 petitioner deducted $622 as interest paid on a home mortgage. Such interest was paid by checks drawn on her husband's bank account. During 1949 petitioner drew checks totaling $771 in favor of her husband. In 1946 petitionre purchased a desk lamp. and in 1948, a desk and desk cover, for her use at her employment. She was at no time requested or required to furnish her own desk or any other items used in her employment. During 1946 through 1949, petitioner's mother and father, her sister, and her two brothers lived in Pinnacle, North Carolina. Their home, which was not equipped with electrical or plumbing facilities, was small and *157 was located about one-fourth of a mile from a paved road on a farm of approximately 42 acres. The farm had a tobacco allotment during these years. In addition there was a garden on the farm from which some produce was raised. Petitioner's brothers assisted in a small way with the garden and tobacco crop. Petitioner's father received pensions from the United States Government as a retired rural mail carrier and as a disabled Spanish American War veteran. In his income tax returns for such years he reported the pensions as follows: Year
Disability Pension
Other
1946
$ 675.00
$1,033.32
1947
1,033.32
1948
1,080.00
1,033.32
1949
1,080.00
1,033.32 In her income tax returns for 1946 through 1948, petitioner's sister reported income of $1,243.30, $1,359.65, and $1,707, respectively, from teaching. Petitioner, during 1946 through 1949, made total deposits of $4,330.42, $8,467.54, $4,418.82 and $4,419.54, respectively, in her bank account at the Farmers Bank of Pilot Mountain, North Carolina. Her balance on hand in such account at the beginning of each year was $210.18, $11.52, $45.30, and $33.38. During these years she received salary checks totaling $1,378.83, *158 $1,631.14, $2,037.26, and $2,305.80, respectively, and of these amounts she deposited, correspondingly, $1,322.45, $1,367.54, $1,806, and $2,305.80 in the Farmers Bank. Of the salary checks not so deposited some were applied as follows: Year
Application
Amount
1947
Guilford National Bank sav-
ings account
$60.18
1947
Schiffman's, Inc., account
71.62
1948
City Industrial Bank savings
account
71.62
1948
Guilford National Bank sav-
ings account
74.82 Salary checks totaling $56.38, $131.80 and $84.82 were unaccounted for during 1946, 1947 and 1948, respectively. During these 4 years petitioner purchased $3,693.75 of Government bonds under the payroll savings plan and deposited in her account with the Farmers Bank $3,242.52, representing proceeds from the redemption of Government bonds. During the same period, the Guilford National Bank issued to her 29 cashier's checks, of which at least 26 were deposited in her account with the Farmers Bank. During 1947 and 1948, petitioner deposited $1,920 in a savings account with the City Industrial and Savings Bank. When this amount was withdrawn at various times during 1947 and 1948, she deposited $1,665 *159 of such amount in her account with the Farmers Bank. During 1946 through 1949, she deposited $427 in a savings account with the Guildford National Bank. Of the $415 withdrawn from this account during such period, $295 was deposited in her account with the Farmers Bank. An analysis of petitioner's checking account with the Farmers Bank shows checks but not cash of petitioner which could have been intended as direct assistance in support of her brothers, Mallory and Grier Hunt, for the years 1947, 1948 and 1949 as follows: Year
Payee or Endorser
Amount
Total
1947
Violette A. Hunt
$ 5.00
(petitioner's sister)
1947
Violette A. Hunt
20.00
$25.00
1948
High Point College
99.00
(Mallory)
1948
High Point College
99.00
198.00
(Mallory)
1949
Mallory N. Hunt
200.00
1949
Violette A. Hunt
10.00
210.00 The analysis of petitioner's sister's account with the Bank of Pilot Mountain shows the following disbursements which could have been used as direct assistance in the support of Mallory Hunt during 1947, 1948 and 1949: Year
Date
Payee or Endorsee
Amount
Total
1947
6-10
High Point College
$109.20
6-23
High Point College Book Store
5.00
6-26
High Point College Book Store
5.00
#83
High Point College
5.00
6-28
High Point College Book Store
5.00
#87
High Point College Book Store
5.00
7-5
High Point College
5.00
7-19
High Point College
104.20
7-21
High Point College Book Store
5.00
8-9
High Point College
2.50
8-27
High Point College
5.00
$255.90
1948
3-9
High Point College
10.00
9-17
Mallory's account
200.00
Mallory's account
50.00
#62
Mallory's account
100.00
360.00
1949
2-5
Mallory's account
100.00
3-9
Mallory's account
50.00
5-13
Mallory's account
50.00
6-4
Mallory's account
50.00
#120
Mallory's account
100.00
8-9
Mallory's account
25.00
8-24
Mallory's account
25.00
9-13
High Point College
2.00
12-21
High Point College
13.50
12-28
Mallory's account
16.50
#140
Mallory's account
59.55
491.55
*160 Petitioner did not contribute more than one-half of the support of her two brothers during any of the years in controversy. Opinion The deficiency is composed of a large number of miscellaneous items of deduction disallowed in whole or in part by respondent; and of the denial of petitioner's claim for dependency credit for her two younger brothers. We have been unable to find that petitioner has borne her burden with respect to any of these items. While it is true, for example, that charitable contributions were probably made by petitioner in excess of the amount that could be specifically substantiated, respondent has already allowed under the Cohan [1] rule a considerable sum in each year to cover unsubstantiated contributions.
In addition to the tax deductions expressly waived by petitioner it appears that a number of the tax payments claimed were either not taxes at all or were not imposed upon petitioner; and, in addition, again respondent has allowed a blanket amount for miscellaneous taxes such as those imposed upon gasoline and sales. We do not have adequate information respecting the claimed casualty *161 losses to determine when or whether they actually took place or their deductibility if they did. Petitioner's recollection was evidently faulty particularly with respect to the matter of chronology. The cost of a patent search and of the desk and lamp which petitioner purchased for her office even if otherwise deductible would presumably be subject to treatment as capital investments covering items having a life of more than 1 year; or at least the contrary has not been shown. And we have no evidence as to the total amount paid for the support of petitioner's brothers so that it could be determined whether the amount petitioner claims to have expended fulfills the requisite condition of constituting the major portion of their support. On the entire record we have determined, as has been said, that no deductions not allowed by respondent and none of the dependency credits should be approved. We do not, however, think that enough has been shown to sustain the fraud penalty. While the evidence leaves the question somewhat in doubt, it seems to us that on the whole petitioner's actions may be considered to be consistent with innocent though possibly negligent mistake. Where the record *162 is in that sort of equipose it cannot be said that the burden of proving the fraud has been successfully carried. James Nicholson, 32 B.T.A. 977, affd. (C.A. 8) 90 Fed. (2d) 978. Perhaps the most serious single item is a deduction for interest in the year 1949. The evidence showed that this payment was made by checks on the bank account of fpetitioner's husband. But it was indicated that the property was jointly owned [2] and petitioner claims to have supplied her husband's bank account with funds against which the checks were drawn. [3] These contentions have not been disproved. If true, they might not only eliminate any charge of fraud but actually justify the claimed deductions. See F. C. Nicodemus, Jr., 26 B.T.A. 125. Petitioner's failure to show the facts [4] as to payment and ownership of the property has caused us to disallow the claim; but for obvious reasons the opposite result must follow where the burden of proof is reversed. Arthur M. Godwin, 34 B.T.A. 485, 494. *163 Decision will be entered under Rule 50. Footnotes
1. Cohan v. Commissioner, (C.A. 2) 39 Fed. (2d) 540↩.
2. It is alleged in the petition though denied in the answer that " $622 represented interest paid * * * for a mortgage on petitioner's jointly owned home * * *." ↩
3. We have found, at respondent's request, that in 1949 petitioner paid to E. J. Sachs (her husband) $771. ↩
4. For example petitioner testified, referring to her husband, "Actually he did pay part of it, but I took it all on my return * * *"↩