Monroe A. Wilson v. Commissioner.
Wilson v. Commissioner
Docket No. 50163.
United States Tax Court
T.C. Memo 1956-53; 1956 Tax Ct. Memo LEXIS 243; 15 T.C.M. (CCH) 229; T.C.M. (RIA) 56053; March 5, 1956
*243 During 1944, 1945 and most of 1946, petitioner Wilson owned and operated a transfer company. In addition, he owned various rental properties during all three of said years. He also operated a liquor store during the latter part of 1945 and early part of 1946. He had a part interest in a gambling enterprise in 1945. He failed to report income from the gambling enterprise for 1945, or from the liquor store in 1946. No books or records relating to petitioner's various business activities were available, except the rental receipts ledger. Held: 1. Respondent was justified in resorting to the net worth plus nondeductible expenditures method in reconstructing income for the years in issue. Adjustments and understatements determined for the years in question. 2. Some part of the respective deficiencies for the years 1945 and 1946 was due to fraud with intent to evade tax. 3. Respondent has failed to prove fraud for the year 1944 by clear and convincing evidence. Hager Odom, Esq., for the petitioner. George W. Calvert, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: The respondent determined deficiencies in income tax of petitioner and additions thereon for fraud undersection 293(b), Internal Revenue Code as follows: 50% Fraud
Year
Deficiency
Penalty
1944
$19,138.89
$ 9,569.44
1945
13,903.74
6,951.87
1946
14,176.72
7,088.36
$47,219.35
$23,609.67
The principal issues presented for our consideration are: (1) whether respondent properly resorted to the net worth plus expenditures method in determining net income for the taxable years involved; (2) the adjustments to be made in respondent's determinations and the amount of understatements of income for the years in question; and (3) whether any part of the deficiency for each of the years in question was due to fraud with intent to evade tax. General Findings of Fact The *245 facts are partly stipulated and, to the extent so stipulated, are incorporated herein by reference. Monroe A. Wilson, the petitioner herein, is an individual residing at Chattanooga, Tennessee. For the years 1944, 1945 and 1946, petitioner timely filed Federal income tax returns with the collector of internal revenue for the district of Tennessee. During the taxable years involved herein, petitioner derived income from several business interests. During the year 1944, petitioner received income from the operation of the Wilson Transfer Company, and from the rental of real estate owned by him. During the following year, in addition to income from the aforementioned sources, petitioner received taxable income from the operation of a retail liquor store for several months, and from a one-third interest in a gambling operation carried on at the Riverside Social Club. He did not report any income from the gambling interest on his Federal income tax return for 1945. During 1946, petitioner received income from the operation of the transfer company, the rental of real estate, and the sale of cattle and hogs. In addition, he continued to operate the retail liquor store until about March *246 1946, but failed to report any income therefrom on his income tax return for 1946. Monroe A. Wilson was 51 years old at the time of the instant proceeding. He was born in Calhoun, Georgia. His formal schooling did not extend beyond the third grade. As a consequence of his limited education, prior to and during the years in question, he could only write his name, read some printing and perform simple calculations of addition. He, however, handled large sums of money. In 1926, petitioner was a farmer in the country town of Ooltewah, Tennessee, when he married Fanny Wells. Immediately thereafter, the couple moved to Chattanooga, Tennessee and lived in a house on Bell Avenue, given to Wilson and his wife by Fanny's father, Will Wells. For the next five years petitioner worked for his father-in-law as an employee in the Wells Pool Room on Market Street. Wilson operated the food counter and racked balls on the pool tables. Wilson's father-in-law kept substantial amounts of cash on hand. Prior to, and during part of the taxable years in question, he owned and operated a livestock farm, various gambling enterprises, a pool room and a bar. Before the years in question, he had also engaged *247 in an illegal whisky business. Several years prior to the taxable periods in question, petitioner established the Wilson Transfer Company, a sole proprietorship, engaged in hauling furniture for the general public in the local area. Hauling equipment consisted of two van trucks. When both vans were in operation, in addition to petitioner's brother, as many as six part-time employees were hired. Petitioner repaired and maintained the trucks himself. No warehouse or garage was occupied by the company and all office functions were performed at petitioner's residence. During 1946, petitioner arranged with Ted Nelson to operate the transfer company for a half interest in the profits therefrom. Near the end of 1946, petitioner sold the transfer company and established a hardware store at 417 Market Street. In the latter part of 1946, Will Wells suffered a heart attack and died December 5, 1946. Under the terms of his will, petitioner was designated as executor of the estate. All of Wells' property was devised to petitioner's wife, Fanny. (Fanny died in 1951.) Petitioner filed a Tennessee inheritance tax return for the estate of Will Wells, indicating thereon a gross estate of $14,305.19, *248 consisting of real estate known as Suck Creek Inn, sold for $7,000; a checking account with a balance of $6,305.19; and two diamond rings appraised at $1,000. Schedule E of the inheritance tax return required that the executor list "all transfers not made for an equal valuable consideration, including trusts created by the decedent, whether made before or after the passage of the Inheritance Tax Act. [1] The return form also contained the following: "If it is contended by the representative of the estate that such transfer or trust is not taxable under the law, a statement setting forth his contention in that respect may be submitted." Petitioner listed no transfers of property in Schedule E of the inheritance tax return filed for Wells, but instead inserted the word "None," indicating that the decedent had made no transfers for less than adequate consideration. The Tennessee inheritance tax return was typewritten in its entirety, except for the signatures of petitioner and Ben Caldwell as a notary public. The statutory notice of deficiency for the taxable years 1944 through 1946, were mailed on July 6, 1953. No *249 issue was raised with respect to the statute of limitations for any of the taxable years in question. Respondent's determination of petitioner's net worth for the taxable years 1944, 1945 and 1946, including nondeductible expenditures is set forth in Schedule A as follows: Net Worth Statement Determined By Respondent
Schedule A
Date
Acquired
12-31-43
12-31-44
12-31-45
12-31-46
ASSETS: Cash in banks and on hand -
Hamilton National Bank, 7th &
Market (M. A. Wilson)
$ 969.51
$ 33.65
$ 1,004.83
$ 1,503.39
Hamilton National Bank, No.
Chattanooga (Mr. and Mrs.
M. A. Wilson)
8,515.03
Cash on hand
20,000.00
25,000.00
35,000.00
40,000.00
Inventory - Liquor Store
13,607.29
Real Estate -
Farms - Mountain Creek Road
12-31-46
22,000.00
Hixson, North Cross Road
1928
1,600.00
1,600.00
1,600.00
1,600.00
Farm machinery
12-16-46
2,938.00
108 Bell Avenue
1928
4,500.00
4,500.00
4,500.00
4,500.00
312 Crisman Street
9-26-46
6,750.00
417 Market Street
3-16-44
30,000.00
30,000.00
30,000.00
618 Bell Avenue
1928
3,000.00
3,000.00
3,000.00
2007 Polk Street
1928
2,000.00
2,000.00
2,000.00
2,000.00
203 Sawyer Street
1943
1,600.00
1,600.00
1,600.00
1,600.00
510 Spears Avenue
1928
3,375.00
3,375.00
3,375.00
3,375.00
25 Trehitt Street
1928
500.00
500.00
500.00
500.00
712 Van Dyke Street
1928
1,000.00
1,000.00
1,000.00
1,000.00
1763-65 White Oak Road
1943
4,700.00
4,700.00
4,700.00
4,700.00
Lots, Woodland Heights
4-30-46
1,500.00
305 Ziegler
1928
600.00
600.00
600.00
600.00
307 Ziegler
1928
2,000.00
2,000.00
2,000.00
2,000.00
2005 Portland Street
1943
1,500.00
1,500.00
1,500.00
1,500.00
Dove Apartments, 109 East 3rd St.
3-27-46
20,000.00
Residence, 3910 Redding Road
9-13-44
14,000.00
14,000.00
14,000.00
Suck Creek Inn
1932
5,900.00
5,900.00
5,900.00
5,900.00
Dayton Pike
6- 4-45
4,500.00
4,500.00
Wilson Transfer Company -
3 trucks
1942
1,970.00
1,970.00
1,970.00
Furniture
3,000.00
3,000.00
3,000.00
3,000.00
TOTAL ASSETS
$58,214.51
$106,278.65
$135,357.12
$183,981.42
LIABILITIES: Bank Loan - Hamilton National
Bank, 7th & Market
$ 9,500.00
Other loans - Ferger Brothers
3,750.00
W. M. Kenner
$ 10,100.00
$ 6,500.00
2,900.00
Reserve for depreciation
$11,183.00
13,234.18
15,557.27
15,731.21
TOTAL LIABILITIES
$11,183.00
$ 23,334.18
$ 22,057.27
$ 31,881.21
Net Worth
$47,031.51
$ 82,944.47
$113,299.85
$152,100.21
*250 The increases in petitioner's taxable income in the years 1944, 1945 and 1946 were computed by the respondent as follows: 1944
1945
1946
Increase in net worth during year
$35,912.96
$30,355.38
$38,800.36
Add: Living Expenses
4,000.00
4,000.00
4,000.00
Income Taxes paid
41.28
293.72
1,417.32
Total of above
$39,954.24
$34,649.10
$44,217.68
Deduct: 50% of long term capital gain
(870.00)
Inheritance from Estate of Will
Wells (died 12/5/46)
(6,306.19)
Adjusted Gross Income
$39,954.24
$34,649.10
$37,041.49
Deduct: Adjusted Gross Income Reported
1,857.37
8,735.31
7,428.88
Increase in taxable income
$38,096.87
$25,913.79
$29,612.61
In his deficiency notice the respondent summarizes the petitioner's income for the taxable years 1944, 1945 and 1946 as follows: 1944
Adjusted Gross Income per return
$ 1,857.37
Add: Increase in Income
38,096.87
$39,954.24
Less: Standard deduction
500.00
Net Income as revised
$39,454.24
1945
Net Income per returns
$ 8,235.31
Add: Increase in Income
25,913.79
Net Income as revised
$34,149.10
1946
Net Income per return
$ 6,928.88
Add: Increase in Income
29,612.61
Net Income as revised
$36,541.49
*251 Petitioner conceded that the foregoing net worth statement and related adjustments are correct, except for the determinations relating to cash on hand, liquor store inventory, realty acquired after 1943, and the estimate of living expenses in each of the years in issue. The conceded items are reflected in Schedules B, C, and D, infra. Findings of Fact - Propriety of Use of Net Worth Method During the taxable years involved herein, except for records of rental receipts, the records of Wilson Transfer Company were maintained by petitioner's wife and daughter, neither of whom had any special knowledge of bookkeeping. A single entry system of bookkeeping was used in which all service calls, including the customer's name, address and charges were recorded in a general journal. Customers often paid petitioner in cash. Each month the total service charges, including business expenses, were transferred to another account book. Employees reported expenditures for maintenance of the trucks to the office without any supporting vouchers. Before filing the income tax return for 1944, petitioner's wife prepared a summary of receipts and expenses and submitted the data to J. B. Holdam, a public *252 accountant (now deceased), who filed out the return. All rental records for the years in question were maintained by Ferger Brothers. A schedule attached to petitioner's 1944 return shows that he received $4,822.29 as rent from some 15 parcels of realty and a net rental income therefrom in the amount of $484.74. The petitioner's Federal income tax returns for 1944, 1945 and 1946 disclosed income from sources and in amounts as follows: 1944
Net profit from rents
$ 484.74
Net profit - Wilson Transfer Co.
1,346.64
Adjusted Gross Income
$1,831.38
1945
Net profit from rents
$3,168.31
Net profit - Wilson Transfer Co., Will's
Liquor Store
6,567.00
Adjusted Gross Income
$8,735.31
Less: Standard Deduction
500.00
Net Income
$8,235.31
1946
Net profits from rents
$3,982.33
Net profit - Wilson Transfer Co., Will's
Pool Room
2,076.55
Gain from sale or exchange of capital
assets
870.00
Sale of hogs and cattle
500.00
Adjusted Gross Income
$7,428.88
Less: Standard Deduction
500.00
Net Income
$6,928.88
The petitioner paid Federal income taxes in 1944 through 1946, inclusive, in the respective amounts of $41.28, $293.72, and $1,417.32. *253 Petitioner did not include income from his gambling enterprise in his 1945 return or income from his liquor store in his 1946 return. In 1952 one of respondent's agents began an investigation of petitioner's tax liability for the years 1944 through 1946, inclusive. The agent visited petitioner's place of business which was a hardware store (established in 1946) at 417-19 Market Street and asked petitioner for the books and records of all of his business interests. Except for rental receipt ledger sheets maintained by Ferger Brothers and some cancelled checks, none of the records and books of Wilson's business interests were available, having been abandoned or destroyed when petitioner moved to his new home in 1944. The only records made available to the agent were those relating to the hardware store, which involved subsequent years. These books, except for minor adjustments, were correct. Respondent determined the net income of the petitioner for the taxable years 1944 through 1946, inclusive, by the net worth plus personal expenditures method. Opinion - Propriety of Use of Net Worth Method Petitioner challenges the respondent's use of the net worth and expenditures method *254 in computing his income and the inclusion of certain items and amounts in the net worth statement on the grounds that adequate records were kept and became lost or destroyed only after the statute of limitations for examination of his records had expired. We find no merit in this contention. We think that, if justification for the use of the method is necessary, the requirement is met by the fact that petitioner did not include in his return for 1945 income from his gambling enterprise, or, in his return for 1946, income from his liquor store, and that, in addition, such records as he did keep were lost or destroyed at the time of the investigation except for the rental receipts. Moreover, we have repeatedly held that the net worth method is not a method of accounting, and may be used as a guide for determining the amount of income actually received where the net worth computation reveals a substantial gap between reported income and the increase in net worth plus nondeductible expenditures, or where the books are otherwise shown to have been inadequately maintained or destroyed. Estate of George L. Cury, 23 T.C. 305 (1954); Frank Imburgia, 22 T.C. 1002, 1009 (1954). *255 Under the circumstances, it is clear that respondent was justified in using the net worth plus expenditures method in determining net income for each of the years in question. Arlette Coat Co., 14 T.C. 751, 754 (1950). Findings of Fact - Living Expenses Monroe Wilson, during the years in question resided at 3910 Redding Road with his wife, a son, Billie, and a daughter, Marie. Petitioner's brother lived with him part of the time. The home, which was new, had eight rooms and cost $14,000. Petitioner paid $500 down and executed a promissory note for the balance payable in monthly installments in the sum of $300. Petitioner listed his wife, Fanny, and the two children as dependents on his returns for the years in issue. During 1944 and 1945, Marie attended the University of Chattanooga. While in school, Marie received gifts from her grandfather amounting to $10 or $15 a week. In 1946 petitioner took his immediate family on a trip to Florida for a week. Petitioner agreed with Agent Swafford in fixing the amount of $4,000 per year as the amount of his living expenses for each of the taxable years in question. We find as an ultimate fact that petitioner's living expenses *256 for each of said years was $4,000. Opinion - Living Expenses Agent Swafford testified that, at a conference in which petitioner was represented by his attorney, he came to an agreement with petitioner that $4,000 represented the amount of petitioner's living expenses for each of the years in question. Petitioner denied that he had agreed to this figure. Said attorney did not take the stand. Petitioner's accountant took the stand, and testified to the effect that there was a discussion about living expenses; that it was his view that the item was disputed; and that he did not "believe" an agreement was reached. He did not take positive issue with the agent. We had the opportunity to observe the agent while on the stand, and were favorably impressed. There was no indication of bias in his attitude, and we see no reason to disbelieve him. On the other hand, there is much in the record, other than his natural bias, to convince us that Wilson is unworthy of belief. We do not think it necessary to review the question of his credibility in detail, but content ourselves at this point with our own observation of him on the stand, and the unquestioned fact that he failed to report income *257 from his gambling enterprise in 1945 or the results of the operation of his liquor business in 1946. Our later discussion relating to the Tennessee inheritance tax return for the estate of Will Wells lends further emphasis to the views here expressed. The testimony of the accountant is too vague to shake our belief in the testimony of the agent. We add that while the facts as to petitioner's living expenses (other than the agreed figure) are rather meager, we think they are consistent with an annual living expense of $4,000. We do not believe that the sole living expenses of petitioner and his family were (as testified by him) only about $15 a week for groceries. Not only does the amount appear to be too small for such a family, but it omits expenses such as clothes, entertainment, expenses of the daughter's attendance at the University of Chattanooga, light, heat, telephone and the like. From the standpoint of determining deficiencies, the burden of proof on this issue is, of course, upon petitioner. We find not only that he has failed to overcome the presumption of correctness of respondent's determination, but also that respondent's view is supported by the affirmative evidence. *258 We sustain respondent on the item of living expenses. Findings of Fact - Cash on Hand Respondent determined cash on hand as follows: December 31, 1943, $20,000; December 31, 1944, $25,000; December 31, 1945, $35,000; December 31, 1946, $40,000. Petitioner had a safe deposit box in the Hamilton National Bank, and a safe at home, in both of which he kept cash. The beginning and ending cash on hand in the amounts of $20,000 and $40,000 were fixed by the agents on the basis of discussion and agreement with petitioner. We find as ultimate facts that the beginning and ending cash on hand was in the amounts of $20,000 and $40,000 respectively, as set forth above. Opinion - Cash on Hand Agents Swafford and Phelps testified that petitioner agreed, in a conference at which he was represented by counsel and an accountant, that he had $20,000 cash on hand as of December 31, 1943, and $40,000 cash on hand as of December 31, 1946. Phelps had taken notes of the ultimate understanding so reached. Petitioner, in his testimony, denied that he had agreed to these figures. The accountant took the stand, but his testimony was quite vague, and cannot be taken as contradicting in any categorical *259 sense the testimony of the agents. Wilson's counsel, who took notes of the conference, did not take the stand. Here, we have much the same problem as that which faced us in connection with the item of living expenses, with some differences, however. In this instance, we have two agents, rather than one, and one of them produced notes of the conference. We have no reason to disbelieve them. At least as to opening cash on hand, the agents favored petitioner by acquiescing in and agreeing to an amount substantially in excess of the approximate $8,000 which petitioner originally suggested. There is nothing to indicate that they would have been untrustworthy as to closing cash when they were quite fair in accepting the maximum suggested for opening cash. Wilson's denial did not impress us for the reasons already stated. The accountant, as already suggested, was too vague to be considered as having contributed anything of a positive nature. All agreed that the attorney took notes, but, although the issue was one of material significance, he did not take the stand, and we do not have the benefit of either his recollection or his notes. We can hardly infer that they would have been favorable *260 to petitioner. Wichita Terminal Elevator Co. (C.A. 10, 1947), 162 Fed. (2d) 513, affirming 6 T.C. 1158. Again, the burden is on the petitioner. He not only has failed to sustain it, but we find the affirmative evidence to the contrary. We therefore accept the cash on hand as of December 31, 1943 at $20,000 and as of December 31, 1946 at $40,000. For the purpose of determining income on an annual accounting basis, we must allocate cash on hand as of the intermediate dates of December 31, 1944 and December 31, 1945, since the increase we have already determined covered the three-year period from December 31, 1943 to December 31, 1946. Respondent has determined the amount to be $25,000 for December 31, 1944 and $35,000 for December 31, 1945. Although his determination is prima facie correct, it is clear from the testimony of the agent who made the allocation in the first instance that he had no affirmative basis for selecting these amounts rather than to apportion the cash to the intervening year-ends on a pro rata basis. We think the latter is the more reasonable approach, in the absence of evidence to the contrary, because it tends to avoid peak and valley *261 results which would ordinarily be to the detriment of the taxpayer. We therefore sustain respondent's determination only in part, and allocate the amount of $26,666 to December 31, 1944 and $33,333 to December 31, 1945. Findings of Fact - Inventory - Liquor Store Respondent determined that, as of December 31, 1945, petitioner had on hand a liquor inventory in the amount of $13,607.29. In Schedule C of petitioner's 1954 income tax return, describing the nature of his business as liquor store and transfer company, he reports total receipts of $55,822.50; no beginning inventory; merchandise bought for sale, $55,896.20; inventory at end of year, $13,607.29; net cost of goods sold, $42,288.91; and gross profit, $13,533.59. We find as a fact the inventory of liquor on hand at the end of 1945 was $13,607.29. Opinion - Inventory - Liquor Store It is clear from our Findings that the liquor store inventory was $13,607.29 as of December 31, 1945, and this fact is not in itself in dispute. Petitioner's position is rather that Wells gave the liquor to petitioner, and therefore that it is not indicative of income to Wilson, and should be eliminated as an asset in the net worth statement. *262 We disagree with this view. The inventory amount in issue represented liquor on hand as of the close of the year 1945, and does not establish what amount of liquor Wells gave to petitioner three months previously. There is some evidence in the record that Wells transferred the license to the store and gave the store to Wilson around the beginning of October 1945, but there is no evidence of what the value or basis of the liquor on hand was at that time. Thus, there is no basis in the record for an offsetting allowance to Wilson, on whom the burden of proof rests. Moreover, the affirmative facts in the record point to a conclusion unfavorable to petitioner. His return for 1945 was prepared by Williams, an accountant, who must have realized the significance of an opening inventory, and no doubt would have inquired about it. Had there been one, whether donated or not, it would have been to the advantage of petitioner to include it in his return. Examination of Schedule C of the return, which is in evidence, fails to disclose an opening inventory in any amount. It does, however, disclose merchandise bought for sale in the amount of $55,896.20, and a year-end inventory of $13,607.29. *263 The only reasonable affirmative inference to be drawn from the foregoing is that Wilson bought from Wells whatever liquor was in the store, the price being included as part of the item of merchandise bought for sale. In all events, in the absence of affirmative evidence, we have no way of determining what, if any, liquor was given to Wilson by Wells, and it is obvious that the inventory at the end of the year does not establish the amount of any donation three months previously. We therefore make no allowance offsetting the item for liquor inventory. Findings of Fact - 417 N. Market Street For some years Will Wells operated his retail liquor store and pool room in a building at 417-19 Market Street, as lessee of Burkett Miller. In the early part of 1944, Miller sold the building to Z. E. Patten. Thereafter, on March 16, 1944, Wells negotiated with Z. E. Patten for the purchase of the building for $30,000. From his own cash funds Wells paid $20,000 as a down payment. A promissory note in the amount of $10,000, payable at $1,000 a month, was executed by Monroe Wilson and his wife. Title was then placed in their names. Thereafter, Wells paid the full amount of the note. Opinion *264 - 417 N. Market Street Wilson testified that although this property was purchased in the names of himself and his wife, Wells was the purchaser and made the original payment of $20,000 and later paid the balance of $10,000. If our decision were to be based on the testimony of Wilson alone, we would reject petitioner's view. There is, however, significant circumstantial corroboration from a number of witnesses. Two of these were Burkett Miller and Harry F. McCool. We have no doubt as to the credibility of these two witnesses, and accept their testimony as true. The remaining three witnesses were employees of Wells, who no doubt were biased, but their testimony lends some support and in a general way is consistent with the overall picture. We hold, therefore, that the purchase price of $30,000 is not indicative of income as far as Wilson is concerned, and the item must be eliminated from the year-end assets as of December 31, 1944, December 31, 1945, and December 31, 1946, in determining Wilson's increases in net worth. Findings of Fact - Residence - 3910 Redding Road Respondent, in his statutory notice, included an item of $14,000, representing the purchase of petitioner's residence, *265 (acquired September 13, 1944) in petitioner's assets as of December 31, 1944, December 31, 1945 and December 31, 1946. In connection therewith, he allowed, as "other loans" - W. M. Kenner, liability for unpaid balance of purchase price, $10,100 as of December 31, 1944; $6,500 as of December 31, 1945, and $2,900 as of December 31, 1946. We find the purchase price to have been $14,000. Petitioner made a down payment which he estimates to have been about $500. The balance was payable at the rate of $300 per month. Petitioner does not dispute the amount of liabilities for deferred payments allowed as deductions as set forth above. Opinion - Residence - 3910 Redding Road There is no dispute about the fact that the property in question was bought as petitioner's residence, or that the purchase price and liability for deferred payments were as set forth in our Findings of Fact. Petitioner's position is, however, that while he made the down payment, he only paid about one-half of the deferred payments of $300 per month. He claims that Wells paid the balance of the deferred payments. As we have indicated previously, we have no faith in Wilson's uncorroborated testimony. As to this item, *266 there is no support other than his word. There are no records of any payments made by Wells, and Wilson himself only purports to approximate them. The holder of Wilson's obligations to make the monthly payments was not called as a witness, and we must assume that, in any event, he was not in a position to testify that Wells had made any of the payments directly to him. In the absence of some corroboration, we hold, as to this issue, that petitioner has failed to overcome the presumptive correctness of respondent's determination. Findings of Fact - Dayton Pike Property On June 4, 1945, Wells purchased from W. H. Henderson the property known as Dayton Pike, and had it put in the names of petitioner and his wife. The consideration was $4,500. Wells wanted to pay for it all at once, but the vendor wanted some interest on his money. They agreed on a down payment of $1,500 (which Wells paid in cash), the balance to be paid in installments of $1,000 each. While the original intent was that the installments were to be paid annually, Wells paid them before they were due on a date not specified in the record. Opinion - Dayton Pike Property Our Findings of Fact are dispositive of this *267 item. Our reasons are similar to those expressed in discussing 417 Market Street. The testimony of Wilson is corroborated by the vendor, Henderson, and we have no reason to doubt the latter's word. The acquisition of the property by Wilson was therefore under circumstances which do not support the view that it was indicative of income to him. We therefore eliminate the item as of December 31, 1945, and December 31, 1946, in determining petitioner's net worth increase. Opinion - Lots, Woodland Heights We have made no Findings of Fact on this item because we find none. Respondent determined that the lots were acquired on April 30, 1946, and included the amount of $1,500 as an asset representing the lots in the closing net worth as of December 31, 1946. His determination is presumed to be correct. The only evidence in the record is that if Wilson, who, in designating certain properties as his own, and others as belonging to Wells, referred to the Woodland Heights lots as follows: "That is some of his property, too." We have discussed Wilson's credibility, supra. We hold that petitioner has failed to overcome the presumptive correctness of respondent's determination. Findings *268 of Fact - Dove Apartments Wells had occupied an apartment for some time in the Dove Apartments, the title to which had been in the name of Mrs. Lucy Cline as trustee for her children. The police raided Wells' apartment because of whisky kept improperly on the premises. The raid achieved some notoriety, and Mrs. Cline thereafter gave Wells notice to vacate. Wells wished to remain, and decided to buy the apartment. He had reason to believe that Mrs. Cline would not sell to him, and he arranged to have Wilson front for him. Wilson arranged to buy the property for $20,000 and made a deposit on account which was furnished by Wells. Mrs. Cline did not know when she entered into the contract that Wilson was Wells' son-in-law. When she found that he was, she attempted to repudiate the agreement, but later, after negotiations with counsel, consummated the sale. The whole purchase price was paid by Wells. The property was put in the names of Wilson and his wife. Opinion - Dove Apartments Here we have much the same issue as that involving 417 Market Street. The testimony of Wilson is circumstantially corroborated by a number of witnesses. These include Mrs. Cline, the vendor-trustee, whose *269 credibility is beyond question, and who was certainly not inclined to favor either Wells or Wilson. Further circumstantial support is found in the testimony of Jack Bryan, an attorney, who negotiated on behalf of Wells and Wilson when Mrs. Cline indicated she wished to repudiate the sale. Bryan had occasionally represented Wells and Wilson in small matters. We were favorably impressed with his testimony and are satisfied that it was not colored by his relationships with Wells or Wilson. There was some further corroboration by Mrs. Vick (granddaughter of Wells and daughter of Wilson) and by three of Wells' employees. On the basis of the corroboration by Mrs. Cline and Bryan, we find for petitioner, and eliminate the $20,000 item from assets as of December 31, 1946, in determining Wilson's net worth increase because the acquisition of the apartment property was from a source not representative of income to him. Findings of Fact - Farms - Mountain Creek Road In the latter part of 1946, an agreement was entered into for the purchase of farm property on Mountain Creek Road. The total purchase price was either $22,000 or $22,500, of which $500 was paid on account as a down payment. *270 After some litigation (the circumstances attending which are not in the record) title was taken in the names of the Wilsons. Opinion - Farms - Mountain Creek Road Respondent, in his determination, included this item as an asset in Wilson's net worth as of December 31, 1946, in the amount of $22,000. His determination is presumed to be correct. Wilson testified that Wells paid the entire consideration for the property. There is some corroboration in the testimony of Wilson's daughter, Mrs. Vick. We have already characterized Wilson's credibility and the probable bias of Mrs. Vick is apparent. There is no further corroboration of petitioner's position. There is, however, a quite significant factor mitigating against him. In our general Findings of Fact, we have made reference to the provisions of the Tennessee Inheritance Law and the requirement for including in the inheritance tax return transfers of property without consideration. It is obvious that if Wilson's testimony relating to the acquisition of the Mountain Creek Road property is true, the inheritance tax return filed by him as executor, inserting the word "None" in Schedule E was false. If the return was true, it follows *271 his testimony was false. The transfer occurred so near to the time of Wells' death in December 1946, and the filing of the inheritance tax return on February 21, 1947, that the circumstances must have been clearly in Wilson's mind when he signed and swore to the return. For the purpose of our own determination, we need not choose, in an affirmative sense, between Wilson's conflicting statements. We point to these additional facts only as further support for our view that his testimony is not worthy of belief. We do not think, under the circumstances, that we are warranted in altering our view merely on the basis of a daughter's corroboration. We realize that we have allowed petitioner the benefit of eliminating the Dove Apartment item as an asset although acquired in the same year and even though Wilson also omitted reference to it in the inheritance tax return filed for Wells. We did so, however, only because we believed the corroborating testimony which included that of at least one disinterested witness of undoubted integrity. We note, also, that the total gross estate listed in the inheritance tax return was only $14,305.19. Granting that Wells paid $20,000 for the Dove Apartments *272 in 1946 and placed the property in the name of the Wilsons, we think it unlikely that he would have further reduced his limited remaining assets by transfers to Wilson in the same year in the amount of $22,000 for the Mountain Creek Road property and $6,750 for the Crisman Street property for the benefit of Mrs. Vick (discussed infra), leaving himself with the comparatively inconsiderable assets of only $14,305.19. This is even more significant when we realize that whether included or excluded for the purpose of determining increase in net worth, Wilson's admitted assets of about $100,000 (excluding, of course, cash on hand) as of December 31, 1945, materially exceeded any amount which may be reconstructed as assets of Wells as of the same date, even though we add together the amount of Wells' gross estate, as disclosed in the inheritance tax return, and the amounts alleged to have been subsequently transferred by him to Wilson in 1946, namely, Dove Apartments, $20,000; Mountain Creek Road Farms, $22,000; Crisman Street, $6,750; and Woodland Heights, $1,500. See Schedule A, supra. In the light of the foregoing discussion, we hold that petitioner has failed to overcome the presumption *273 of correctness of respondent's determination, and we sustain respondent in including it in closing net worth. Findings of Fact - 312 Crisman Street In September of 1946, the property 312 Crisman Street was purchased for $6,750, title being taken in the name of Wilson and his wife. The property was bought for the use of their daughter (now Mrs. Vick) and her husband, shortly after her marriage. Opinion - 312 Crisman Street Our views on this item are much the same as those expressed in relation to the Mountain Creek Farm property, and we need not repeat them in detail. Respondent's determination is again prima facie correct, and the burden of proof is on petitioner. Wilson testified that his daughter asked her grandfather to buy the property for her, and that Wells did so, but put the property in the name of the Wilsons because he was opposed to the marriage and didn't think it would last. Mrs. Vick's testimony is substantially the same. There is no further corroboration, and no supporting record of payment by Wells. What we have already said as to the credibility of the witnesses is again applicable. Again the transfer was not reported in the Tennessee inheritance tax *274 return. At the time the property was bought it appears clear from an analysis of the whole record that Wilson's assets were substantially in excess of Wells'. Upon consideration of all of the evidence, we hold, as we did with respect to the Mountain Creek Road property, that petitioner has failed to overcome the presumption of correctness of respondent's determination. Opinion - Summary of Determination of Unreported Income In the following Schedule B we have summarized the conceded items and our determinations relating to the disputed items, resulting in a determination of Wilson's net worth as of December 31, 1943, December 31, 1944, December 31, 1945 and December 31, 1946. Schedule C applies Schedule B to the determination of increases in taxable income for the years in question with adjustments allowed by respondent in his deficiency notice. Effect is given to nondeductible expenditures and to gross income reported. Schedule D determines net income as revised for each year on the basis of Schedules B and C after allowing the standard deduction for 1944. (Note: The standard deduction was claimed in the income tax returns for 1945 and 1946.) Schedule B
Date
Acquired
12/31/43
12/31/44
12/31/45
12/31/46
Assets: Cash in banks and on hand: Hamilton National Bank, 7th St.
(M. A. Wilson)
$ 969.51
$ 33.65
$ 1,004.83
$ 1,503.39
Hamilton National Bank (Mr. and
Mrs. Wilson)
8,515.03
Cash on Hand
20,000.00
26,666.00
33,333.00
40,000.00
Inventory - Liquor Store
13,607.29
Real Estate: Mountain Creek Road
22,000.00
Hixson North Cross Road
1928
1,600.00
1,600.00
1,600.00
1,600.00
Farm Machinery
12/16/46
2,938.00
108 Bell Avenue
1928
4,500.00
4,500.00
4,500.00
4,500.00
312 Crisman Street
9/26/46
6,750.00
618 Bell Avenue
1928
3,000.00
3,000.00
3,000.00
2007 Polk Street
1928
2,000.00
2,000.00
2,000.00
2,000.00
203 Sawyer Street
1943
1,600.00
1,600.00
1,600.00
1,600.00
510 Spears Avenue
1928
3,375.00
3,375.00
3,375.00
3,375.00
25 Trehitt Street
1928
500.00
500.00
500.00
500.00
712 Van Dyke Street
1,000.00
1,000.00
1,000.00
1,000.00
1763-65 White Oak Rd.
1943
4,700.00
4,700.00
4,700.00
4,700.00
Lots, Woodland Heights
4/30/46
1,500.00
305 Ziegler
1928
600.00
600.00
600.00
600.00
307 Ziegler
1928
2,000.00
2,000.00
2,000.00
2,000.00
2005 Portland Street
1943
1,500.00
1,500.00
1,500.00
1,500.00
Residence, 3910 Redding Road
9/13/44
14,000.00
14,000.00
14,000.00
Suck Creek Inn
1932
5,900.00
5,900.00
5,900.00
5,900.00
Wilson Transfer Co. - 3 trucks
1942
1,970.00
1,970.00
1,970.00
Furniture
3,000.00
3,000.00
3,000.00
3,000.00
Total Assets
$58,214.51
$77,944.65
$99,190.12
$139,481.42
Liabilities: Bank Loan - Hamilton National Bank
$ 9,500.00
Other Loans - Ferger Brothers
3,700.00
W. M. Kenner
$10,100.00
$ 6,500.00
2,900.00
Reserve for depreciation
$11,183.00
13,234.18
15,557.27
15,731.21
Total Liabilities
$11,183.00
$23,334.18
$22,057.27
$ 31,881.21
Net Worth
$47,031.51
$54,610.47
$77,132.85
$107,600.21
*275 Schedule C
12/31/43
12/31/44
12/31/45
12/31/46
Net Worth - end of year
$47,031.51
$54,610.47
$77,132.85
$107,600.21
47,031.51
54,610.47
77,132.85
Increase over preceding year
7,578.96
22,522.38
30,467.36
Add: Living expenses
4,000.00
4,000.00
4,000.00
Income taxes paid
41.28
293.72
1,417.32
Total of above
$11,620.24
$26,816.10
$ 35,884.68
Deduct: 50% of long-term capital gain
(870.00)
Inheritance from Estate of Will
Wells (Date of Death 12/5/46)
(6,306.19)
Adjusted gross income
$11,620.24
$26,816.10
$ 28,708.49
Adjusted gross income reported
1,831.38
8,735.31
7,428.88
Increase in taxable income
$ 9,788.86
$18,080.78
$ 21,279.61
Schedule D
1944
Adjusted gross income per return
$ 1,857.37
Add: Increase in income
9,788.86
$11,646.23
Less: Standard deduction
500.00
Net income as revised
$11,146.23
1945
Net income per return
$ 8,235.31
Add: Increase in income
18,080.79
Net income as revised
$26,316.10
1946
Net income per return
$ 6,928.88
Add: Increase in income
21,279.61
Net income as revised
$28,208.49
Findings of Fact - Fraud
*276 In petitioner's return for 1944, he reported net profit from rents and from Wilson Transfer Company. In his return for 1945, he reported net profit from rents, and from a grouping of items under the heading Wilson Transfer Company and Will's Liquor Store. He did not report his share of the profits from an interest in a gambling enterprise which consisted of charging a "cut" on the amounts wagered in poker games. He admitted that he received one-third of the income from the enterprise as his proportionate share. In his return for 1946, Wilson reported net profits from rents, and from a grouping of items under the heading Wilson Transfer Company and Will's Pool Room. He also reported gain from the sale of capital assets and from the sale of hogs and cattle. He did not report any profits from his operation of a liquor store which he owned for a period of about three months during that year. We find as an ultimate fact that a part of the respective deficiencies for the years 1945 and 1946 was due to fraud with intent to evade the tax. Opinion - Fraud As to the year 1944, respondent bases his contention of fraud solely upon an understatement of income. He points to no specific *277 omission or misstatement in the return. The burden is upon respondent to establish fraud by clear and convincing evidence. Frank Imburgia, supra.
We think respondent has failed to meet his burden of proof with respect to the year 1944. While we have determined that there was an understatement of income of over $9,000 for that year, we have held in prior cases that a mere understatement of income does not establish fraud. James Nicholson, 32 B.T.A. 977 (1935) affirmed 90 Fed. (2d) 978 (C.A. 8, 1937). Moreover, in the instant case, our determination of an understatement for 1944 was based in material respects upon petitioner's failure to meet his burden with respect to some of the factors involved in the issues relating to deficiencies in tax as distinguished from fraud. Respondent, however, cannot meet his own burden of establishing fraud on the basis of petitioner's failure to discharge the burden of proving error in respondent's determination of deficiencies in tax. The existence of fraud with intent to evade taxes must be affirmatively established. We hold with petitioner as to the year 1944 on the issue of fraud. In the year 1945, *278 however, we have an additional element present. While our finding of an understatement of income in the amount of some $18,000 for 1945 is again based in material respects upon petitioner's failure to sustain his burden of proof, we have in that year the specific factor that petitioner received profits from an interest in a gambling enterprise which he did not report. It is clear that some part of the deficiency is attributable thereto, because he reported other taxable income, and some deficiency must have resulted from the failure to add the gambling income to the income otherwise reported. Wilson, of course, signed the return, which included a declaration under the penalties of perjury that it had been examined by him and to the best of his knowledge and belief was true, correct and complete. It is apparent that an examination of the return must have disclosed the omission and we can only conclude that his failure to include the gambling income was due to fraud with intent to evade the tax. It is not necessary for respondent to demonstrate how much of the deficiency for 1945 is to be attributed to the foregoing. The issue of fraud for the year 1946 is similar to that of 1945. *279 Our finding of an understatement of income of a little over $21,000 is again attributable in material respects to petitioner's failure to meet his burden of proof relating to deficiencies. It is not of itself a basis for establishing fraud. On the other hand, however, petitioner admittedly owned and operated a liquor store for about three months in the beginning of 1946. It is clear from his testimony that records of the operations of the business had been kept for the three months in the beginning of 1946 as well as for the latter part of 1945. Petitioner does not claim that the business was unprofitable. The brief filed on his behalf admits that he received taxable income from the liquor store in 1946. An examination of the return for that year shows that he did not report it. Again he reported taxable income from other sources. Thus, some part of the deficiency for 1946 must have resulted from the failure to include in his return the taxable income from the operation of the liquor store. Once more, Wilson executed the return, and the omission was apparent on the fact of the return. We have no means of knowing how much of the deficiency for 1946 is to be attributed to the failure *280 to report the income from the liquor store, but, as indicated above with respect to 1945, it is only necessary for respondent to establish that some part of the deficiency is attributable thereto. We think it is clear under the circumstances that the failure to report income from the liquor store was fraudulent. We hold, therefore, that some part of the deficiency for 1946 was due to fraud with intent to evade taxes. It is apparent from our discussion of the fraud issue in each year that fraud penalties under section 293(b) will apply to the deficiencies for the years 1945 and 1946, but not to the year 1944. Decision will be entered under Rule 50. Footnotes
1. See Tennessee Code Annotated (Williams, 1934), Sections 1259, 1260.↩