H. D. Michael v. Commissioner. M. B. Hansen and Alice R. Hansen v. Commissioner.
Michael v. Commissioner
Docket Nos. 52596, 52867.
United States Tax Court
T.C. Memo 1956-257; 1956 Tax Ct. Memo LEXIS 37; 15 T.C.M. (CCH) 1344; T.C.M. (RIA) 56257; November 19, 1956
*37 Gordon Shephard, Esq., and James R. Oppenheimer, Esq., for the petitioner in Docket No. 52596. O. A. Brecke, Esq., for the petitioners in Docket No. 52867. George E. Van Roekel, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent determined deficiencies in and additions to the income taxes of petitioners as follows: H. D. Michael, Docket No. 52596
Addition to Tax
Year
Deficiency
Sec. 293(b)
1945
$ 5,895.43
$2,947.72
1946
8,461.70
4,230.85
M. B. Hansen and Alice R. Hansen,
Docket No. 52867
1945
$11,449.82
$5,724.91
1946
10,829.84
5,414.92
In determining the deficiencies the following adjustments were made by respondent: 1945
1946
H. D. Michael
Unallowable deductions and additional income: (a) Income from Oak Grove Company
$9,748.44
$15,617.24
(b) Income from partnership of A. D. Kleinman
and H. D. Michael
1,683.06
312.63
(c) Commissions omitted
1,366.94
(d) Miscellaneous business expenses disallowed
1,817.72
1,650.37
(e) Net capital gain adjusted
480.68
119.98
(f) Interest income
12.45
M. B. Hansen and Alice R. Hansen
Unallowable deductions and additional income: (a) Income from rents increased
$9,930.47
$ 3,272.76
(b) Income from partnership of A. D. Kleinman
and M. B. Hansen increased
2,291.72
347.06
(c) Income from Oak Grove Company not re-
ported
9,748.45
15,617.24
Nontaxable income and additional deductions: (d) Capital gain decreased
39.29
*38 Of the adjustments made by respondent in determining the amounts of the deficiencies, each petitioner disputes only those pertaining to the income of the Oak Grove Company. The entire amount of the additions to tax is disputed. Two questions are presented: (1) whether respondent erred in adding to gross income of each petitioner one-half of the income of the business known as the Oak Grove Company; (2) whether the additions to the tax were properly imposed. Findings of Fact Petitioners M. B. Hansen and Alice R. Hansen are husband and wife and reside in Minneapolis, Minnesota. Petitioner H. D. Michael is a resident of St. Paul, Minnesota. Petitioners filed their Federal income tax returns for the calendar years 1945 and 1946 with the collector of internal revenue for the district of Minnesota. M. B. Hansen (sometimes hereinafter referred to as Hansen) is engaged in the business of owning and operating rental apartment properties. He was employed by A. D. Kleinman, another real estate operator, from about 1925 to 1936, at which time he began to acquire and operate properties in his own behalf. By January 1944 Hansen had acquired approximately ten rental properties, all of *39 which had encumbrances outstanding. H. D. Michael (sometimes hereinafter referred to as Michael) is the husband of C. M. (Caroline) Michael (sometimes hereinafter referred to as Caroline). He had been in the real estate business with his brother-in-law, A. D. Kleinman, in Minneapolis. Subsequently he left Minneapolis and worked as a cashier in various banks in Minnesota and Wisconsin and as the secretary-treasurer of a brewery. Michael returned to St. Paul to live in 1942 and again engaged in the real estate business with his brother, C. W. Michael, and also with A. D. Kleinman. Mathilde E. Meredith (sometimes hereinafter referred to as Mathilde) is the widowed sister of M. B. Hansen. Prior to his death in 1940, Mathilde had helped her husband manage motels and hotels in various parts of the country. In 1936 Mathilde returned to Minneapolis and worked for her brother, Hansen, in an apartment building. Since that time Mathilde has worked in various apartment buildings owned by her brother, with such duties as renting, collecting money and managing the employees. Caroline Michael has been a housewife since her marriage to H. D. Michael in 1916. Around 1918 she received an inheritance *40 of approximately $2,000 which she turned over to her husband. The title to the Michael home is registered in her name. Caroline had never engaged in real estate activities prior to the acquisition of the Oak Grove Hotel. Michael has handled all of the business affairs of the family. Around January 1944, Hansen communicated with a real estate agent concerning the possible acquisition of a property in Minneapolis known as the Oak Grove Hotel. About the same time Hansen contacted Michael and together they entered into negotiations for the purchase of the property. The Oak Grove Hotel was principally a residential hotel containing 140 units, 15 of which were maintained as transient rooms. In January 1944, it was owned by the Providence Institution for Savings of Providence, Rhode Island. The fee title was carried in the name of Leona M. Segool as nominee for the bank. The bank had acquired the property in a mortgage foreclosure but was not interested in owning real estate. Since this property was operating at a loss as far as their investment was concerned, the bank was anxious to sell it. After negotiating with the local agent of the bank concerning the sale of this property, on *41 February 4, 1944, Hansen entered into an earnest money contract with the agent for purchase of the property. At that time Hansen paid $5,000 of earnest money and was characterized in the instrument as the vendee of the property. On March 7, 1944, Hansen and Leona M. Segool entered into a contract for deed to the property. The contract was acknowledged by Leona M. Segool in Rhode Island on March 13, 1944. Under the terms of the earnest money contract $39,000 was necessary as a down payment, with a total required consideration of $265,000. Hansen and Michael decided that it would be best if the property were held by a partnership composed of Mathilde and Caroline. Accordingly, on March 14, 1944, Hansen assigned all of his rights under the contract for deed to Mathilde and Caroline as copartners. On that same day Mathilde and Caroline entered into a partnership agreement purportedly for the purpose of operating the Oak Grove property. Neither Mathilde nor Caroline took part in any of the negotiations concerning the sale of the property, nor did they discuss the proposed formation of the partnership until they were brought together in the attorney's office to sign the agreement. The *42 agreement provided that the partners should be compensated by salary for any personal services rendered to the business, the amount of salary to be mutually agreed upon. A certificate of trade name was filed certifying that the business conducted under the trade name of "Oak Grove Company" was a partnership composed of partners M. E. Meredith and C. M. Michael. Michael loaned $35,000, which he had largely obtained by borrowing, to the partnership in order that it might fulfill the down payment obligation under the contract for deed. The partnership agreement provided that no distribution of earnings could be made to the partners before the reimbursement of this loan from Michael. The partnership then executed a promissory note to Michael and assigned all of its interest in the property as collateral security for the loan. Petitioners Hansen and wife also executed an agreement guaranteeing the reimbursement of Michael to the extent of one-half of any loss he might suffer arising out of his loan to the partnership. On March 30 and April 14, 1944, Michael drew checks on the account of the Oak Grove Hotel in the amounts of $3,000 and $2,000, respectively, payable to himself. These *43 checks were subsequently endorsed first by Michael and then by Hansen and constituted reimbursement of the $5,000 earnest money paid by Hansen. After the acquisition of the contract for deed by the partnership, Mathilde moved to the Oak Grove Hotel where she has since acted as rental and resident manager. Mathilde was in charge of the maids and phone operators in the hotel but Michael instructed the bookkeeper and engineer. Hansen and Michael had the final word on any major expenditures such as the installation of an elevator in the building. Michael usually went to the property several times each week and directed certain correspondence with OPA officials, together with the billing and adjustment of tenant accounts. Hansen maintained an office in the building, and occasionally examined the books and records of the hotel. Mathilde did not have control over her salary; it was established by Michael at $110 per month, together with the right to an apartment in the building. Her salary of $110 per month was deducted in arriving at the profit of the Oak Grove Hotel partnership in its Federal income tax information returns and withholding forms were issued to Mathilde by the partnership *44 characterizing her as an employee. Caroline did not take an active part in the management of the hotel. In the fall of 1944, after negotiations conducted by petitioners, the purchase of the property was refinanced. The partnership borrowed $235,000 from the Aid Association for Lutherans, a Wisconsin corporation, and executed a note secured by a real estate mortgage. The note was signed by Hansen, Michael, Mathilde, and Caroline. With the proceeds from the loan the partnership completed the payments under the contract for deed and received a limited warranty deed to the hotel and a bill of sale covering all of its furniture and equipment. Title to the property was registered under the Torrens system, and a certificate of title was issued setting forth that the fee owners of the Oak Grove Hotel property were Caroline Michael and Mathilde Meredith doing business as the Oak Grove Company. The loan to the partnership by Michael was subsequently paid in full and cancelled on November 8, 1944. On November 16, 1944, two checks of $1,000 each were drawn on the account of the Oak Grove Hotel and were payable to Michael and Hansen, respectively. Michael used his $1,000 in the purchase of *45 a family automobile. For the balance of the fiscal year of the partnership ending February 28, 1945, after the payment of the Michael note, a total of $6,000 in checks was drawn on the account of the partnership and made payable either to Hansen or to cash and subsequently endorsed by Hansen. During this same period another $6,000 in checks was drawn on the account of the partnership, with different payees which were "H. D. Michael," "C. M. Michael," and "cash." All of these checks were endorsed by H. D. Michael. For the fiscal year of the partnership ending February 28, 1946, a total of $25,000 in checks on the account of the partnership was drawn to "cash" or to "M. B. Hansen" and subsequently endorsed by Hansen. During this period checks for the identical amounts cashed by Hansen were also made payable to "cash" or "H. D. Michael" and were subsequently endorsed by either "C. M. Michael" or "H. D. Michael." Of the total $25,000 represented by these checks, only one endorsement by Caroline was not followed by the endorsement of Michael, and on this check following her endorsement was that of a stock brokerage firm. At this time Caroline did not have an account at this stock brokerage *46 firm but H. D. Michael did. On March 28, 1943, a $7,500 mortgage on the Michael residence was recorded. On May 27, 1946, the $6,844.70 unpaid balance of this mortgage was satisfied and on the same day a new mortgage on the property in the amount of $6,000 was recorded, the mortgagee being listed as C. W. Michael, who was a brother of H. D. Michael. This mortgage was satisfied in full on May 14, 1948. During the calendar years 1945 and 1946 stock in the amount of $1,074.71 was purchased in the name of Caroline. Of the $31,500 in checks which was received by the Michaels in the two years in issue, $14,500 was taken in cash, the rest being deposited either in banks or with the stock brokerage firm. During the years in question H. D. Michael had authority to sign checks in all the checking accounts which were in the name of Caroline. There had never been any accounting in regard to the moneys belonging to each. Mathilde has received only her salary of $110 per month and the use of the apartment. She has never enjoyed any of the distributions of earnings by the partnership nor has Hansen ever executed any written instrument agreeing to reimburse her for the money he has received *47 from the partnership distributions. Hansen paid the Federal income taxes of Mathilde for the years 1945 and 1946. The income tax of Caroline for the fiscal year ending February 28, 1946 was paid by H. D. Michael. The Federal income tax returns of Caroline and Mathilde for the years 1945 and 1946 included the portion of the income of the business which was distributable to them according to the partnership returns. Other than $44.49 in the 1945 return of Hansen characterized as wages from the Oak Grove Company, the returns of the petitioners Michael and Hansen for the years in issue did not include any amounts of income or salary from the hotel business. The income tax returns of petitioner Michael were prepared by an independent accountant during both years in issue, as was the return of Hansen for the year 1945. In 1947 a Minnesota corporation known as the Oak Grove Company was organized. The records of the corporation show a debit to H. D. Michael and M. B. Hansen each for the amount of $500, with a corresponding credit entry labeled "capital stock" $1,000. The stub records of the stock certificate book of the corporation indicate that in 1949 ten shares of stock were issued, *48 five in the name of M. B. Hansen and five in the name of C. M. Michael. On March 1, 1947, Mathilde and Caroline entered into a contract to sell the hotel property and other adjoining realty to the corporation. According to the terms of the contract the corporation became obligated to pay the outstanding indebtedness of the partnership and to pay $70,531.03 to the partners in installments; $19,000 on or before March 1, 1948 and every year thereafter until March 1, 1951, when the balance was due. During the fiscal year ending February 28, 1948, the corporation paid out $19,000 in checks characterized as payments on a contract for sale. Of this amount checks for $9,500 were made payable to Mathilde and $9,500 to Caroline. All of Mathilde's checks were subsequently endorsed by Hansen. H. D. Michael endorsed checks in the amount of $5,500 which were payable to Caroline. The remaining checks payable to Caroline were deposited in the bank account of H. D. Michael. On November 29, 1949, a deposit of $24,010 was made in a savings account held in the name of C. M. Michael. Respondent determined that petitioners each had a one-half interest in the Oak Grove Hotel business during the years *49 1945 and 1946 and that one-half of the income from said business was includible in the gross income of each petitioner. Respondent also determined that the deficiencies were due to fraud with intent to evade tax. Opinion This case differs from the ordinary family partnership situation in that there is here no question of members of a family purporting to be partners. Here two women, the wife of one petitioner and the sister of the other petitioner, entered into a partnership agreement. Respondent contends that during the years in issue each petitioner did in fact receive one-half of the profits of the Oak Grove Hotel business under a claim of right and accordingly such moneys are taxable to them or, in the alternative, that petitioners were partners in the Oak Grove Hotel business during the years in issue and therefore one-half of the income from the business is taxable to each. Since the respondent will prevail if we find either of the above contentions to be true, the burden is upon the petitioners to prove both incorrect. Having found that this burden has not been sustained as to the alternative theory advanced by the respondent, we do not find it necessary to discuss the merits *50 of his first contention. Issue I The test laid down by the Supreme Court in Commissioner v. Culbertson, 337 U.S. 733, for determination of whether or not a partnership is valid for tax purposes is "whether, * * * considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it was used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Thus, as pointed out in Slifka v. Commissioner, 182 Fed. (2d) 345, affirming a Memorandum Opinion of this Court [8 TCM 431], this makes motive a test of taxability. Petitioner Michael testified that his desire to have the property in his wife's name was prompted by two considerations: (1) he did not want to become liable for any loss which might be suffered if the hotel failed; and (2) he wanted to repay his wife for her inheritance *51 which she had loaned him years before. Insofar as the first reason of petitioner Michael is concerned, in the light of what actually transpired, we do not consider it to have been the dominant purpose. Michael borrowed approximately $35,000 and loaned it to the partnership. Subsequently, in November 1944, when the property was refinanced, he signed the mortgage and note as was required under Minnesota law. Such action is hardly consistent with the desire to hold oneself free from any loss. In regard to the second reason for Caroline holding the property in her own name, the the evidence indicates that his was advanced by the petitioner as an afterthought; that in fact Michael and his wife had never had any accounting of moneys; and that the disposition of the inheritance by Caroline was merely a contribution to the common fund for family living costs and other family expenses. In any event, its size is insignificant when compared with the Oak Grove investment. Petitioner Hansen testified that he wanted the property to be held in his sister's name because he "wanted to do something for her." However, considering his subsequent conduct, he has failed to convince us that his desire *52 to aid his sister in reality went beyond his supplying her with employment. It has repeatedly been said that taxation looks to the substance of transactions, not to their form. See Gregory v. Helvering, 293 U.S. 465. An analysis of what actually transpired and the actions of all the parties does not convince us that Mathilde and Caroline in good faith and acting with a busines purpose, intended to join together in the conduct of the Oak Grove Hotel enterprise. The negotiations for the purchase of the property were conducted exclusively by the petitioners. It was only after petitioner Hansen had entered into the earnest money contract that the "partnership" was formed. The idea of forming a partnership composed of the two women was conceived by the petitioners. The women did not discuss the proposition with each other until they met in the attorney's office to sign the papers. The original capital invested in the business came from petitioners. It is true that a note was executed by Mathilde and Caroline together with the assignment of all their rights and interest in the property as collateral security for the loan by Michael. However, no evidence was introduced *53 to show whether this security would have been sufficient in an ordinary arm's length business arrangement. Actually the evidence indicates that the women at this time had very little property of their own with which to secure a loan. Furthermore, petitioners Hansen and wife executed an instrument providing that Michael would be reimbursed for one-half of any loss arising out of the loan to the "partnership." This action placed Hansen in the position of sharing the risk in the business, which is inconsistent with his contention that he was not a partner. After the repayment of the loan it was legally permissible for the partnership to distribute earnings to the partners. Nevertheless, the evidence shows to the contrary, that distributions were made to and controlled by the petitioners. Mathilde testified that she had never received anything more than her salary of $110 per month. The evidence indicates that H. D. Michael controlled all of the moneys distributed to the Michael half of the business. Some evidence was introduced to the effect that $24,010 had been placed in a safe deposit box by Michael for Caroline and had later been deposited in a savings account for her. However, *54 there was no conclusive evidence as to when this money was accumulated, where it came from, or that prior to the deposit in 1949 it was not under the complete control of H. D. Michael. Petitioner Hansen testified that the money which he withdrew from the business and admittedly used in his other real estate properties merely constituted a loan from Mathilde. However, we note that during this period Mathilde was rather unsuccessfully trying to obtain a raise in $110her per month salary. Considering this, we can hardly conclude that Mathilde, when trying to get an increase in her meager salary, would have assented to the "loan" of her entire share of the profits of the business under the partnership agreement. Hansen testified that "She [Mathilde], of course, can have that [the money] at any time and in any manner she wants it." Yet, there has never been any written instrument executed by the parties as a memorial of any of these "loans." In the actual management of the hotel, Mathilde had the power to make routine decisions, but the petitioners admitted that any decisions of major importance were subject to their approval. The theory advanced by Michael in explaining the fact *55 that he took an active part in the management of the business was that he was acting as an agent of his wife, Caroline. However, on cross examination, Caroline responded to questioning as follows: "Q. Now isn't it correct that you more or less follow Mr. Michael's advice in regard to real estate matters? "A. Yes. "Q. So you do what he tells you to do, isn't that correct? "A. Yes." Thus, in actuality Michael was the dominant party in the arrangement; he was the one who made the decisions, and was not the mere agent of his wife. It is not at all clear from the evidence who were the real owners of the stock of the corporation which bought the hotel business in 1947. The corporation's books indicate that Michael and Hansen were the owners, while the stubs on the stock certificate book indicate that the stock was issued in 1949 to Hansen and Caroline. Nor is it clear why the business was sold to the corporation. Neither Mathilde nor Caroline offered any explanation for this transfer. To the contrary, it appears that this transaction was also the result of the petitioners' dominance. The evidence indicates further that the money which Mathilde and Caroline were entitled to receive *56 under the sales contract with the corporation went the way of the partnership profits, into the hands and control of the petitioners. In view of all the facts it seems to us that the partnership was the creature of the petitioners, conceived and brought into existence by them for their own benefit, and that it was directed, controlled and terminated by them - that in fact the petitioners were the actual partners and that the income of the Oak Grove Company partnership should be taxable to them as such. Cf. Meier v. Commissioner, 199 Fed. (2d) 392, affirming Memorandum Opinion of this Court [10 TCM 1088]; Schneider v. Kelm, 137 Fed. Supp. 871 [905] (on appeal C.A. 8). In support of their contention that a valid partnership existed for Federal income tax purposes, petitioners have principally relied upon Scofield v. Davant, 218 Fed. (2d) 486; Stanchfield v. Commissioner, 191 Fed. (2d) 826; Henson v. Commissioner, 174 Fed. (2d) 846; and Willis H. Vance, 14 T.C. 1168. These cases are distinguishable. Contrary to the facts of the instant case, in Scofield, Stanchfield, and Vance, all the *57 facts indicate that the partners did actually receive and control their pro rata share of the partnership profits as set out by the partnership agreement; in other words, that they were in reality treated as partners in that the terms of the partnership agreements were followed. In Henson, although the facts indicated that the husband did draw from the wife's share of the partnership profits, there was a formal entry in the books of the partnership indicating that he thereby became indebted to the partnership in that amount, thereby recognizing the fact that he was not entitled to it in his own right. Furthermore, in that case the husband was paid a salary for his services and a definite employer-employee relationship did exist. Moreover, each of these cases subscribes to the rule set out in Culbertson and all such cases must necessarily be decided upon their own individual fact situations. Issue II Respondent also seeks to impose the fraud penalty under section 293(b), Internal Revenue Code of 1939.[1] Fraud implies bad faith, intentional wrongdoing, and a sinister motive. Davis v. Commissioner, 184 Fed. (2d) 86. It is never imputed or presumed and the burden rests *58 upon the respondent to prove by clear and convincing evidence that the petitioners were guilty of fraud with intent to evade tax. Davis v. Commissioner, supra; A. W. Mellon, 36 B.T.A. 977. Respondent has pointed out that the petitioners did not dispute several of the adjustments made by the Commissioner. The mere fact that income is understated, by itself, does not establish fraud. If it did, then all taxpayers against whom deficiencies are determined would be guilty of fraud and subject to the imposition of the fraud penalty. Cf. James Nicholson, 32 B.T.A. 977, affd. 90 Fed. (2d) 978; L. Glenn Switzer, 20 T.C. 759, remanded on other grounds, (C.A. 9), - Fed. (2d) - (Sept. 17, 1954). In the instant case, respondent offered no evidence pertaining to the *59 fraudulent character of the undisputed adjustments. It is to be noted, however, from the statements attached to the notices of deficiencies that, except as to the income derived from the Kleinman and Oak Grove partnerships, the adjustments appear to have resulted from differences of opinion with respect to the nature of various deductions claimed. The adjustments with respect to the Kleinman partnerships were not explained. Accordingly, such adjustments though conceded by the petitioners to be correct are not sufficient basis for a finding of fraud. It is apparent from the respondent's briefs that he deems the fraud penalty should be levied because of the failure of the petitioners to report their share of the Oak Grove partnership income. Although we have found from the evidence that for Federal income tax purposes the alleged partnership did not exist and that the petitioners were the real partners, respondent has not, in our opinion, established by clear and convincing evidence that the attempt to form the partnership and the reporting of income on that basis was due to fraud with intent to evade tax. The additions to the tax proposed by the respondent are, therefore, disallowed. *60 Decisions will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩